**In re Ross C. CIOPPA, Former Magisterial District Judge, District Court 05–2–09, Fifth Judicial District, Allegheny County.**

**No. 4 JD 12.**

Court of Judicial Discipline of Pennsylvania.

June 5, 2012.
Sanctions Order July 24, 2012.

924

Before CURRAN, P.J., MORRIS, CLEMENT, JR., CELLUCCI, and McCUNE, JJ.

OPINION BY Judge CELLUCCI.

## I. *INTRODUCTION*

The Judicial Conduct Board ("Board") filed a Complaint with this Court on April 20, 2012 against Magisterial District Judge Ross C. Cioppa ("Respondent"). The Complaint charges that Respondent has engaged in uninvited and unwanted sexual contact with two female litigants in his court and that Respondent was indicted by a grand jury for such conduct for the following crimes: (1) Bribery, 18 Pa.C.S.A. § 4701(a)(2) (two counts), a felony of the third degree; (2) Official Oppression, 18 Pa.C.S.A. § 5301(1) (two counts), a misdemeanor of the second degree; and Indecent Assault, 18 Pa.C.S.A. § 3126(a)(1) (two counts), a misdemeanor of the second degree.

On April 12, 2012 Respondent pleaded guilty to the two misdemeanors; the felony charge was withdrawn; and judgment of sentence was entered. Respondent has not appealed from the judgment of sentence.

On May 14, 2012, Respondent filed an Answer to the Complaint in which he admitted all the factual allegations made in the Complaint.

The Board has charged that Respondent's conduct set out in the Complaint not only constitutes misdemeanors but also subjects him to discipline under Article V,

§ 18(d)(1) of the Pennsylvania Constitution for the following reasons:

1. The conduct is such that violated Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that:

RULE 2. IMPROPRIETY AND APPEARANCE OF IMPROPRIETY TO BE AVOIDED.

A. Magisterial district judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Magisterial district judges shall not allow their family, social or other relationships to influence their judicial conduct or judgment. They shall not lend the prestige of their office to advance the private interest of others, nor shall they convey or permit others to convey the impression that they are in a special position to influence the judge (Count 1),

2. by virtue of Respondent's violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges, Respondent has violated Article V, § 17(b) of the Pennsylvania Constitution which provides in part that:

[magisterial district judges] shall be governed by rules or canons which shall be prescribed by the Supreme Court.... (Count 2),

3. the conduct is such that prejudices the proper administration of justice, or brings the judicial office into disrepute, violations of Article V, § 18(d)(1) of the Pennsylvania Constitution (Count 3).[1]

---

1. In Count 3 the Board charges two discrete violations of the Constitution (conduct which "prejudices the proper administration of justice" and conduct which "brings the judicial office into disrepute") but It presents them in the disjunctive, i.e., as if it is either one or the other. (In all probability this is because the

Board has lifted the language of the Constitution where the disjunctive is appropriate and placed it in Count 3 where it is not.) It is clear enough that it is the Board's intention to charge that Respondent's conduct was such that prejudices the proper administration of

The Court has reviewed the factual allegations of the Complaint and, inasmuch as Respondent admits all the allegations, the Court hereby accepts the allegations of the Complaint, in pertinent part, as the facts necessary for the disposition of this case.

## II. *FINDINGS OF FACT*

1. Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania grants to the Board the authority to determine whether there is probable cause to file formal charges against a judicial officer in this Court and, thereafter, to prosecute the case in support of such charges before this Court.

2. From June 25, 1999 until his resignation on December 9, 2011, Respondent served as the duly elected Magisterial District Judge for District 05–2–09 in Allegheny County.

3. By Presentment dated October 6, 2011, Respondent was indicted by a countywide investigating grand jury for the following offenses: (1) Bribery, 18 Pa. C.S.A. § 4701(a)(2) (two counts), a felony of the third degree; (2) Official Oppression, 18 Pa.C.S.A. § 5301(1) (two counts), a misdemeanor of the second degree; and Indecent Assault, 18 Pa.C.S.A. § 3126(a)(1) (two counts), a misdemeanor of the second degree. See Exhibit "A" of Board's Complaint.

4. By criminal complaint, Jackelyn Weibel, a detective employed by the Office of the District Attorney of Allegheny County, charged Respondent with the above-cited offenses on October 12, 2011.

5. On October 12, 2011, the Board filed a Petition for Relief under CJD Rule 701 and Board Rule 13(A) requesting Respondent's interim suspension with pay.

On October 17, 2011, this Honorable Court granted the Board's Petition and issued an Order suspending Respondent from all of his duties as a magisterial district judge with pay.

6. Thereafter, Respondent resigned from his office as Magisterial District Judge of District Court 05–2–09, Allegheny County, effective on December 9, 2011, at the close of business.

7. On April 12, 2012, Respondent appeared with counsel before the Honorable Jill Rangos, Allegheny County, and pleaded guilty to two (2) counts of Indecent Assault and to two (2) counts of Official Oppression.

8. In the Presentment referred to in Finding of Fact 3 the grand jury sets out the supporting facts for the charges made in the Indictment which Respondent has admitted. Those facts are set out in the "Findings" of the Presentment at pages 4–6 thereof. The Presentment is attached to the Board's Complaint as Exhibit "A" wherein the supporting facts are stated to be as follows:

In the case presently before this Court it is stipulated that Victim 1 appeared in Respondent's court for an active landlord/tenant case (wherein the landlord had filed an action in Respondent's court for eviction and possession of her apartment), and after court had ended for the day, she was alone in the courtroom with Respondent. At this time, he attempted to kiss her. He then hugged her and placed her hand on his genitals. He asked her to use her hand to massage him until he had an erection. Victim 1 testified that she was an unwilling participant in these actions. Victim 1 began to comply, but when she resisted and pulled away, Respondent told her that if she told anyone, no one would

justice *and* which brings the judicial office into disrepute. We will so treat it.

believe her "because [he] is a judge and [he's] well known out there." Immediately after this incident, Victim 1 testified, Respondent told her to come into his chambers. He proceeded to pull out a grey digital camera and told her that he wanted to take photographs of her and if she agreed, she would be able to stay in her home. Victim 1 allowed Respondent to take several pictures of her while she sat and subsequently lay on the brown leather couch in his chambers. Victim 1 testified that she believed that allowing Respondent to take her picture was the only way that she would be able to stay in her apartment where she resided with her children. When her landlord/tenant hearing was held the following week, Respondent ruled in her favor.

Victim 2 had an active landlord/tenant case in Respondent's court in late 2009. Victim 2 traveled to the Respondent's office on November 4, 2009 in hopes of speaking to Respondent about her pending case. Victim 2 testified that she was alone in the courtroom with him. After she explained her landlord/tenant dispute to him, Respondent told her "not to worry" about her case. Victim 2 testified that she felt uncomfortable because after the conversation about her case had ended, Respondent asked her personal questions and "hugged" her when she stood up to leave. She pulled away from Respondent and attempted to leave the courtroom, however Respondent blocked the closed courtroom door and again embraced her. Victim 2 pulled away again after which Respondent continued to ask her suggestive questions. He then proceeded to embrace her a third time and, according to Victim 2, "this time he put his hands down around my butt and I noticed that he had an erection." Victim 2 testified that she gave him no indication that she wanted

to be approached by him in a sexual manner and she was an unwilling participant in these actions. After more protestations, Respondent released her and stepped away from the door. Victim 2 testified that she went directly to her vehicle but when she started to back her car out of the parking spot, there was a vehicle behind her blocking her in. Victim 2 testified that Respondent was in the vehicle and from the window, he called her over to his vehicle. He then asked her if she wanted to go out on a date with him and he gave her his business card which had his cell phone number handwritten on it. Respondent told her to call him and he would make her case "go away." Victim 2 testified that she did not call him. When her landlord/tenant hearing was held, Respondent ruled against her.

9. In return for Respondent's plea of guilty to the aforementioned offenses, the Commonwealth agreed to withdraw the Felony Bribery charges. Thereafter, Respondent waived a pre-sentence hearing and was sentenced by Judge Rangos to an aggregate sentence of six (6) months of house arrest, to be followed by a consecutive four (4) year term of probation.

10. At a meeting held on April 2, 2012, the Board found that there was probable cause to file formal charges in this Court against Respondent for the aforementioned conduct which Respondent has admitted at the hearing on his guilty plea as well as in his Answer to the Board's Complaint.

## III. DISCUSSION

*Count 1.*

 Count 1 charges Respondent with violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges. The Rule provides:

RULE 2. IMPROPRIETY AND APPEARANCE OF IMPROPRIETY TO BE AVOIDED.

A. Magisterial district judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Magisterial district judges shall not allow their family, social or other relationships to influence their judicial conduct or judgment. They shall not lend the prestige of their office to advance the private interest of others, nor shall they convey or permit others to convey the impression that they are in a special position to influence the judge.

Even the most incurious glance at the rule will quickly reveal that its language is vague and imprecise—conspicuously so: words and phrases such as "impropriety," "appearance of impropriety," "confidence in the integrity" unmistakably invite—nay, require—subjective interpretation. This is undesirable because subjective interpretations invariably vary one from another, and this is at variance with the mission of this Court—or, at least, with the aspiration of this Court—which is to provide the judges of this Commonwealth with consistent holdings so they will know what conduct does—and what conduct does not— constitute a violation of any of the rules of conduct, including Rule 2A.

This Court first encountered this difficulty with Canon 2 (and therefore Rule 2A.)[2] in the case of *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997) where the

Board averred that a judicial officer had sexually harassed a courthouse employee and charged that such conduct was a violation of Canon 2. In that case this Court observed that Canon 2:

> [is] directed at conduct which would impugn or detract from the ... "integrity and impartiality" of the judiciary.

*In re Cicchetti, supra* at 313. We then held that:

> "Integrity" must be read in *pari materia* with ... "impartiality" in Canon 2. Both of those words ... exhort judges to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence. Consistently with this notion, "integrity" is defined as follows:
>
> > 1: An unimpaired condition: SOUNDNESS
> >
> > 2: firm adherence to a code of esp. moral or artistic values: INCORRUPTIBILITY
> >
> > 3: the quality or state of being complete or undivided: COMPLETENESS *syn.*, see HONESTY
>
> Webster's New Collegiate Dictionary, 1993.

*Id.* We then repeated what we had emphasized in *In re Smith*, 687 A.2d 1229, 1240 (Pa.Ct.Jud.Disc.1996):

> Canon 2 in general is directed towards conduct which could potentially cause the public or litigants to believe that a judge is not acting impartially.[3]

*In re Cicchetti, supra*, at 313. We then held that the conduct proscribed by Canon

---

**2.** Canon 2 of the Code of Judicial Conduct and Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges are identical.

**3.** The instructions contained in Subsection B. of Canon 2 (and in Rule 2A.): that "a judge should not allow his family, social or other

relationships to influence his judicial conduct or judgment" and that he should not "convey or knowingly permit others to convey the impression that they are in a special position to influence him," provide further support for this interpretation of Canon 2.

2 did not include the Respondent's harassment of the female court employee.

On appeal the Supreme Court affirmed this holding and stated:

> Canon 2 similarly addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activities. Appellee is not subject to censure for a violation of Canon 2 based on his conduct toward Ms. Brueggman because it was independent of his decision-making duties.

*In re Cicchetti,* 560 Pa. 183, 201, 743 A.2d 431, 441 (2000).

In the case presently before this Court sexual harassment again is the conduct involved but the circumstances are quite different. Here Respondent's conduct was an intimate part of his decision-making process in his handling of both victims. In this case this Respondent was bargaining away his impartiality—he was trading it for a little sexual *quid pro quo.* This conduct is the prototype of the conduct which Rule 2A. is intended to proscribe. And we find the conduct in this case to be particularly nasty because of the divergent (and contrasting) circumstances of Respondent and his victims and because of the circumstances in which the Respondent decided to initiate the action. We need not elaborate; suffice it to say that this Respondent's conduct is precisely the conduct proscribed by Rule 2A. as that rule is interpreted by this Court and the Supreme Court in *Cicchetti;* and we so find.

*Count 2.*

■ Count 2 charges that Respondent violated a rule prescribed by the Supreme Court, *viz.,* Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges which is a violation of Article V, § 17(b) of the Pennsylvania Constitution.

In dealing with this Count we adopt (and repeat) what we first said in *In re Joyce and Terrick,* 712 A.2d 834 (Pa.Ct. Jud.Disc.1998). In those cases the Board charged a violation of Article V, § 17(b) of the Pennsylvania Constitution based on a violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges and we held:

> Section 17(b) of Article V of the Pennsylvania Constitution provides:

> Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

> In the section, justices of the peace (now known as District Justices)[4] are treated separately from justices and judges, for a reason no more complicated than that justices of the peace are governed by a separate and different Code of Conduct than the Code of Judicial Conduct which applies to justices and judges.

> We make two conclusions regarding the application of Article V, § 17(b) of the Constitution:

> 1. Violation of a canon of legal or judicial ethics by a justice or judge is a violation of § 17(b) of the Constitution. Section 17(b) by its terms makes a violation of a canon a violation of § 17(b). Violation of the latter is thus derivative and automatic.

> 2. Though the sentence referring to justices of the peace says they "shall be governed by [The Rules Governing Standards of Conduct of District Justices]" but does not specifically say "shall not violate [those Rules]," in the context of § 17(b) the phrases mean

**4.** Now known as magisterial district judges.

the same, and the inclusion of the second sentence was intended to make a violation of the District Justices' Code a violation of the Constitution just as a violation of the Judicial Code is made a violation of the Constitution by the first sentence. Otherwise, there was no purpose in including the second sentence and its injunction would have no meaning or application—a violation of elementary principles of statutory interpretation. *See,* 1 Pa.C.S. § 1921, *Habecker v. Nationwide Ins. Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982) and cases cited therein. Thus, a violation of the Rules Governing Standards of Conduct of District Justices is an automatic, derivative violation of § 17(b) of the Constitution.

*In re Joyce and Terrick, supra* at 845–46.

*Count 3.*

As we have said, Count 3 charges Respondent with two discrete violations of the Constitution, *viz.,* engaging in conduct which prejudices the proper administration of justice which we will treat as Count 3(A), and conduct which brings the judicial office into disrepute which we will treat as Count 3(B).

*Count 3(A).* Conduct which prejudices the proper administration of justice.

■ This Court has been called upon a number of times to determine whether particular conduct was such that "prejudices the proper administration of justice." *See, In re Zupsic,* 893 A.2d 875 (Pa.Ct.Jud. Disc.2005); *In re Berkhimer,* 828 A.2d 19 (Pa.Ct.Jud.Disc.2003); *In re Kelly,* 757 A.2d 456 (Pa.Ct.Jud.Disc.2000); *In re Melograne,* 759 A.2d 475 (Pa.Ct.Jud.Disc. 2000); *In re Joyce and Terrick,* 712 A.2d 834 (Pa.Ct.Jud.Disc.1998); *In re Trkula,* 699 A.2d 3 (Pa.Ct.Jud.Disc.1997); and *In re Smith,* 687 A.2d 1229 (Pa.Ct.Jud.Disc. 1996).

It is so elementary that it goes without saying (we are obliged to say it in this opinion, however, in order to make the point) that a *sine qua non* of the "proper administration of justice" is an impartial judge. And we have held that in order to qualify as conduct which prejudices the proper administration of justice the judicial officer must have "acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example, by affecting a specific outcome." *In re Zupsic, supra,* at 889.

It is not open to question that Respondent's conduct was intended to affect a specific outcome—he *promised* that it would. He promised that, for a consideration, he would take off his robe of impartiality and decide in favor of the female-litigants whose eases were before him. The two episodes, from their incipience in the mind of this Respondent to his eventual rulings, establish that there is no doubt that Respondent intended that his actions—that his promise—would have a deleterious effect on the administration of justice and that it would prejudice the right of the opposing parties, in this case the victims' landlords, to have the case tried on its merits.

We hold that Respondent's conduct in the course of his encounters in his courtroom with the two female litigants was such that prejudices the proper administration of justice.

*Count 3(B).* Conduct which brings the judicial office into disrepute.

■ In *In re Smith,* 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996), this Court noted that the conduct of a judge which results in a decline in the public esteem for that judge, may not support the conclusion that the conduct has brought the judiciary as a whole into disrepute, absent a persuasive showing by the Board that the conduct is

so extreme as to have brought the judicial office itself into disrepute. *See, also, In re Cicchetti,* 697 A.2d 297, 312(Pa.Ct.Jud.Disc.1997).

In *Cicchetti,* 697 A.2d at 312, this Court noted that:

> The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

In *Smith,* we said that:

> "Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Smith, supra,* at 1239.

We hold that Respondent's conduct in this case was extreme enough to come within the meaning of that word as intended in our earlier opinions; indeed, in this case, Respondent's conduct "aces" the "extreme" test. And, certainly, the reasonable expectations of the public would include the expectation that a judicial officer will not despoil his judicial oath in a tawdry, coercive pursuit of sexual liberties with two women whom the misfortunes of life had fortuitously placed in this Respondent's courtroom.

We hold that Respondent's conduct was such that brings the judicial office into disrepute in violation of Article V, § 18(d)(1) of the Pennsylvania Constitution. *See, In re Berry,* 979 A.2d 991 (Pa. Ct.Jud.Disc.2009) and cases cited therein.

## IV. CONCLUSIONS OF LAW

1. The Respondent's conduct set out in Finding of Fact No. 8 is:

 (a) a violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges,

 (b) a violation of Article V, § 17(b) of the Pennsylvania Constitution,

 (c) conduct which prejudices the proper administration of justice which is a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution,

 (d) conduct which brings the judicial office into disrepute which is a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

2. Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

Judge JAMES, Judge McGINLEY and Judge MULLEN did not participate in the disposition or consideration of this case.

