In re Rita A. **ARNOLD, Magisterial District Judge, Magisterial District Court 15–2–06, Chester County.**

**No. 2 JD 12.**

Court of Judicial Discipline of Pennsylvania.

June 13, 2012.

Sanctions Order Issued July 24, 2012.

Before CURRAN, P.J., JAMES, MORRIS, McGINLEY, CLEMENT, JR., CELLUCCI, McCUNE, and MULLEN, JJ.

OPINION BY Judge McGINLEY.

## I. *INTRODUCTION*

The Judicial Conduct Board ("Board") filed a Complaint with this Court on February 15, 2012 against Magisterial District Judge Rita A. Arnold ("Respondent"). The Complaint charges that:

1. Respondent failed to docket a citation filed in her court by the state police against Forrest C. Solomon, Jr., one of her sons, charging him with harassment, a summary offense, arising out of an altercation with another of her sons, Jonathan Arnold, in a timely fashion and failed to require that the citation was docketed by her staff in a timely fashion.

2. Respondent directed her staff not to docket the Solomon citation.

3. Respondent intentionally directed the transfer of the Solomon citation to Magisterial District Judge Bruno's court in contravention of the established Chester County rule.

4. Respondent provided misrepresentations of material fact to Chester County Court Administration, the President Judge of Chester County, and the Judicial Conduct Board (an arm of the judicial administrative authority of this Commonwealth) during their investigation of these facts.

5. Respondent directed Patricia Davis, her office manager, to provide misrepresentations of material fact to the Judicial Conduct Board in its official investigation of the aforementioned facts.

The Board charges that the said conduct constitutes violations of:

1. Rule 5 of the Rules Governing Standards of Conduct of Magisterial District Judges which provides in part:

   A. Magisterial district judges shall diligently discharge their administrative responsibilities, maintain competence in judicial administration and facilitate the performance of the administrative responsibilities of their staff and of other members of the judiciary and court officials.

   B. Magisterial district judges shall require their staff to observe the standards of fidelity and diligence that apply to them. (The Court will call this Count 1.)

2. Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges which provides in part:

   Magisterial district judges, constables and all employees assigned to or appointed by magisterial district judges shall not engage, directly or indirectly, in any activity or act incompatible with the expeditious, proper and impartial discharge of their duties, including, but not limited to, (1) in any activity prohibited by law. . . . (The Court will call this Count 2.)

3. Article V, § 17(b) of the Pennsylvania Constitution which provides in part:

   Magisterial district judges shall be governed by rules or canons which shall be prescribed by the Supreme Court. (The Court will call this Count 3.)

4. Article V, § 18(d)(1) of the Pennsylvania Constitution which provides in part:

   A justice, judge, or magisterial district judge may be suspended, removed from office, or otherwise disciplined for . . . failure to perform the duties of office or conduct which prejudices the proper administration of justice[1]. . . . (The Court will call these Counts 4A and 4B.)

The Board and the Respondent have submitted amended stipulations of fact in lieu of trial pursuant to CJ.D.R.P. No. 502(D)(1) and a waiver of trial. The Court has accepted these stipulations of fact as amended in pertinent part, as recited below, as the facts necessary for the disposition of the case.

## II. *FINDINGS OF FACT*

1. Pursuant to Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania and Judicial Conduct Board Rule of Procedure 31(A)(3), promulgated by the Pennsylvania Supreme Court on March 20, 1995 (amended 1996), the Board holds the authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists, to file formal charges, against a justice, judge or justice of the peace, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2. Since January 3, 1994, Respondent served as a magisterial district judge for Magisterial District 15–2–06, Chester County. Respondent continues to serve

---

**1.** The Board charges two discrete violations of the Constitution ("for failure to perform the duties of office" and conduct which "prejudices the proper administration of justice") but it presents them in the disjunctive, i.e., as if it is either one or the other. (In all probability this is because the Board has lifted the language of the Constitution where the disjunctive is appropriate and placed it in Counts 4A and 4B where it is not.) It is clear enough that it is the Board's intention to charge that Respondent's conduct was such that failed to perform the duties of office *and* which prejudices the proper administration of justice. The Court will so treat it.

Magisterial District Court 15–2–06 as a magisterial district judge.

3. Respondent is the mother of Forrest C. Solomon, Jr., and Jonathan Arnold, adult half-brothers, who, as of January 2010, each resided with her at her residence located at 1307 Lone Eagle Road, Downingtown, PA 19335.

4. Forrest C. Solomon, Jr. has an extensive record of arrests for crimes ranging from simple assault and harassment to possession with intent to deliver. On January 19, 2010, Mr. Solomon was subject to the supervision of the Chester County Adult Probation and Parole Department (Chester County Probation/Parole) for a conviction of indecent assault and for probation violations on other cases that arose from the indecent assault conviction. Mr. Solomon's supervision will terminate on July 1, 2015.

5. Respondent knew that Mr. Solomon was subject to Chester County Probation/Parole supervision, and she often transported him to his regularly scheduled meetings with Joseph Zangrilli, his then-probation officer.

6. On January 6, 2010, Mr. Solomon failed a required random drug screening at a regularly scheduled meeting with Mr. Zangrilli.

7. Thereafter, on January 19, 2010, Trooper Lauren Long of the Pennsylvania State Police (PSP), Embreeville Barracks, cited Mr. Solomon with harassment, 18 Pa.C.S.A. § 2709(a)(1), graded as a summary offense, as the result of an altercation that took place between Respondent's sons, Mr. Solomon and Jonathan Arnold, at Respondent's residence, which is situated within Respondent's magisterial district.

8. As Mr. Solomon's acts on January 19, 2010 took place within Respondent's magisterial district, the PSP filed the citation in Respondent's court on January 20, 2010, the day following the altercation. Respondent's staff member, Britney Clark, date stamped and initialed the citation.

9. The Solomon citation then moved from Clark's desk to Respondent's "in box" on her desk for her to docket it into the Magisterial District Judge System (MDJS). Respondent did not docket the Solomon citation into the MDJS at that time.

10. On the same day that the Solomon citation was filed in Respondent's court, Respondent called Sergeant Brandon Daniels of the Embreeville PSP regarding Solomon's arrest and the citation.

11. During their telephone conversation, Respondent told Sergeant Daniels "that was my son and that was my house," referring to both Solomon and the site of the incident. Respondent stated that she had thought that the troopers were only removing Solomon from the house after they responded to the incident between her two sons, and Respondent asked why the troopers had decided to cite her son (Solomon). Daniels could not answer Respondent's questions about the Solomon citation because he was not aware of the details of the Solomon case. He told Respondent that he would inquire into the matter and call Respondent back. At some point during the course of his inquiry into the background of the Solomon arrest and citation, he received the Solomon citation back at the barracks. The citation, when received by Sergeant Daniels, had already been date stamped and marked received by Respondent's court.

12. Sergeant Daniels called Respondent back and told her that, after his investigation, he thought that the Solomon citation had been properly issued. Sergeant Daniels also told Respondent that he

was going to return the citation to her court.

13. Respondent sounded upset when Sergeant Daniels discussed the filing of the citation and Respondent stated that she could not hear the case because it involved her son and Respondent stated that she would have to transfer it. During either the first or second conversation between Respondent and Sergeant Daniels, Respondent stated that Solomon was on probation. Respondent also stated words to the effect that it was a shame that "something as simple as this could really mess" Solomon up.

14. During the period of time that the Solomon citation sat in Respondent's personal office without being docketed, Respondent's court offices at 441 Boot Road, Downingtown, PA, were forced to close on two occasions due to a noxious fume problem. Respondent's court offices closed for the first time on or about January 27, 2010, and they reopened briefly on or about February 8, 2010. Thereafter, on or about February 10, 2010, Respondent's court office location at 441 Boot Road closed permanently due to the noxious fume problem.

15. Respondent's office staff personnel were located at various magisterial district court office locations in Chester County due to the noxious fume problem, whereat they conducted their duties for Respondent. Respondent worked at the offices of Magisterial District Judge Mark Bruno until on or about February 15, 2010, whereupon Respondent's offices were relocated to a temporary office location.

16. On or about February 2010, while Respondent and her staff worked from an office located at 2 North High Street, West Chester, Respondent approached Patricia M. Davis, her office manager, and spoke to her about the Solomon citation,

17. During the course of this conversation, Respondent handed the Solomon citation to Ms. Davis and told her to "hold on to it." Respondent told Ms. Davis that she (Respondent) would instruct her (Ms. Davis) when she was to docket the Solomon citation into the MDJS and when to transfer the citation. Respondent told Ms. Davis that Mr. Solomon had a probation hearing coming up and that Respondent did not know if the citation filed against him would "affect it or not," meaning Mr. Solomon's probationary status.

18. Based on Respondent's instructions, Ms. Davis placed the Solomon citation in her work bin on her desk and did not docket it. The Solomon citation was not docketed until April 5, 2010. During the period when Ms. Davis possessed the Solomon citation, she reminded Respondent on at least one occasion about the Solomon citation.

19. On or about March 14, 2010, Trooper Long was reviewing the status of the citations that she had filed, and she determined that the Solomon citation was not yet docketed. Trooper Long informed Sergeant Daniels, her superior, of this fact, and he told Trooper Long that he would contact Respondent about the matter.

20. On March 15, 2010, Sergeant Daniels telephonically contacted Respondent to inquire about the status of the case.

21. Daniels told Respondent that it was time to update the status of PSP citations, and the PSP was aware that the Solomon citation was not yet docketed. Respondent replied that "it was not a problem," and she told Sergeant Daniels that there was a lot going on and that her court was really backlogged but that the Solomon citation would be docketed "any day."

22. On April 5, 2010, Respondent docketed the Solomon citation into the MDJS and thereafter instructed Ms. Davis to

transfer the Solomon citation to Judge Bruno's court for disposition.

23. Trooper Long continued to check the Pennsylvania Justice Network (JNET) to determine the status of the Solomon citation. On April 8, 2010, Trooper Long learned that the citation was docketed on April 5, 2010, and that the citation was transferred to the court of Magisterial District Judge Bruno on April 7, 2010.

24. The rules in Chester County regarding transfer of cases from one magisterial district court to another require the transferring court to first obtain a transfer order from the President Judge of Chester County prior to affecting the transfer. Respondent knew that she violated this procedure when she transferred the Solomon citation to Judge Bruno's court without authorization from the president judge.

25. On April 7, 2010, after Ms. Davis effected the transfer of the case (in contravention of the pertinent Chester County rule), Respondent called Judge Bruno's court office and told someone present at Judge Bruno's office that Mr. Solomon was in drug/alcohol rehabilitation.

26. Judge Bruno continued the case from the scheduled hearing date of May 19, 2010, until June 2, 2010, in order to accommodate Trooper Long's prescheduled vacation. On June 2, 2010, the parties appeared, and Judge Bruno dismissed the matter because Jonathan Arnold, the victim, did not appear for the trial and because Mr. Solomon presented a certificate of his successful completion of the rehabilitation program.

27. Chester County Probation did not learn of Mr. Solomon's citation, and, as such, it did not take official action against him because of the citation or for his missed meetings, failed drug tests or for a combination of these matters. Before Chester County Probation took action against Mr. Solomon for his failed drug tests and missed meetings, Respondent informed Mr. Zangrilli that Mr. Solomon needed treatment and that he was in a rehabilitation program.

28. Patricia Norwood–Foden is the District Court Administrator of Chester County. Subject to the direction and supervision of Chester County President Judge James E. MacElree, II, Ms. Norwood–Foden manages the non-judicial functions of the Chester County Magisterial District Courts.

Ms. Norwood–Foden received a report from an employee who was working on a project for the Chester County Controller's office involving case management reports. The employee reported to Ms. Norwood–Foden that, when reviewing case management reports, he recognized Mr. Solomon's name and noted several irregularities during case processing of the Solomon citation and on the electronic MDJS case docket for the citation. The employee was aware of the fact that Mr. Solomon was Respondent's son. After receiving the report, Ms. Norwood–Foden reviewed the electronic docket of the case on MDJS and other information, including the Solomon citation itself.

Based upon her independent review, Ms. Norwood–Foden uncovered the following irregularities regarding the processing of the Solomon citation in Respondent's court:

1. Respondent's court received and date stamped the Solomon citation on January 20, 2010. However, the Solomon citation was date stamped a second time on February 8, 2010, and it was not docketed by Respondent until April 5, 2010.

2. Respondent transferred the case to Judge Bruno's court without a valid transfer order from the president judge.

3. Comparison of the other citations filed during the period of the noxious fume problem in Respondent's court with the Solomon citation indicated that the only citation docketed late was the Solomon citation.

4. Though the case was transferred to Judge Bruno's court, the MDJS case disposition processing report indicated that the user name "RARNOLD" (Respondent's screen name) entered the disposition of "dismissed" into the MDJS system after Judge Bruno conducted the trial hearing.

Ms. Norwood–Foden reported the irregularities to President Judge MacElree. At the direction of President Judge MacElree, Ms. Norwood–Foden discussed the matter with Respondent on or about October 15, 2010. During this conversation, Ms. Norwood–Foden reiterated the proper procedures to transfer a case to Respondent, and she acknowledged that she was aware of the proper procedure. Ms. Norwood–Foden also directed Respondent to craft a written response to President Judge MacElree to address their concerns about the processing of the Solomon citation by Respondent's court.

29. Respondent authored a written response to President Judge MacElree on October 18, 2010. In summary, Respondent indicated in the written response that she did not timely docket the Solomon citation because she misplaced and completely forgot about the citation during the move of her court offices from 441 Boot Road occasioned by the noxious fume problem in January–February 2010. Respondent denied any knowledge of the entry of the "dismissed" disposition for the citation and she denied any "intention of doing anything improper with the citation, or to obtain any favorable treatment for" Mr. Solomon, her son.

30. President Judge MacElree mailed the results of Ms. Norwood–Foden's investigation (including Respondent's October 18, 2010 letter) to the Judicial Conduct Board on October 27, 2010. Upon review of this material, chief counsel opened an investigation on behalf of the Board.

31. During the course of its investigation, the Board deposed Respondent on October 5, 2011. The transcript of that deposition indicates that Respondent acknowledged under oath that she did not forget completely about the Solomon citation during her office moves. Respondent testified that she forgot about the citation between February 15, 2010 (when the citation was packed in a box) and March 15, 2010, when she spoke with Sergeant Daniels. Respondent maintained that, after she spoke with Sergeant Daniels, she searched for the citation until April 5, 2010, when she found it in a box and docketed it. Respondent acknowledged, however, that the delay in docketing the citation and her transfer of the citation each was improper, of itself.

32. The Board issued a subpoena for Patricia Davis, Respondent's office manager, to appear at its offices and to testify regarding the processing of the Solomon citation.

When Respondent learned of the subpoena, she instructed Ms. Davis to testify to the Board that she (Ms. Davis) did not know of the Solomon citation until Respondent told her to transfer the citation on April 5, 2010. However, in reality, Ms. Davis became aware of the Solomon citation in February 2010, when Respondent gave Ms. Davis the Solomon citation and instructed her not to docket it.

Also at the time Respondent learned of Ms. Davis' Board deposition, Respondent had a quizzical, out-of-context conversation with Ms. Davis about their loyalty to each other regarding a personnel issue with

court administration that had been resolved one year prior to the issuance of the subpoena and the conversation.

Unsettled by Respondent's "loyalty" conversation, Ms. Davis reported the matter to Ms. Norwood–Foden, who memorialized the matter and reported it to President Judge MacElree. Ms. Davis was also provided counsel by Chester County for her Board deposition.

The Board conducted a deposition of Ms. Davis on December 20, 2011. At the deposition, Ms. Davis testified that Respondent instructed her in February 2010 to hold on to the Solomon citation and not to docket it. Ms. Davis also testified that, after Respondent learned of Ms. Davis' pending Board deposition, Respondent instructed Ms. Davis as to how Respondent wanted Ms. Davis to testify if the Board asked Ms. Davis about when she first learned of the citation.

### III. *DISCUSSION*

■ Count 1 charges a violation of Rule 5 of the Rules Governing Standards of Conduct of Magisterial District Judges. The language of that Rule which it is necessary to consider is:

Magisterial district judges shall diligently discharge their administrative responsibilities ... and facilitate the performance of the administrative responsibilities of their staff....

Count 2 charges a violation of Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges. The pertinent language of that Rule is:

Magisterial district judges ... shall not engage ... in any activity or act incompatible with the expeditious, proper and impartial discharge of their duties....

It is easy to see that from the time the State Police citation came into her office Respondent engaged in a course of conduct which violated both Rule 5 and Rule 13. She failed to docket the citation when it was filed as it was her duty and responsibility to do and instructed her office manager to "hold on to it" and not to docket it until Respondent told her to docket it (Findings of Fact Nos. 9, 14, 16, 17, 18). This was an obvious violation of her personal administrative responsibilities and overtly contrary to her obligation to "facilitate the performance of the administrative responsibilities of [her] staff" (Rule 5) (Count 1); and was just as obviously "incompatible with the expeditious, proper and impartial discharge of her duties" (Rule 13) (Count 2).

Because it violated those two Rules, the same conduct was also an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution, which provides in part that:

Magisterial district judges shall be governed by rules or canons which shall be prescribed by the Supreme Court.

*In re Joyce and Terrick*, 712 A.2d 834 (Pa.Ct.Jud.Disc.1998).

The same conduct is also an obvious violation of the language of the Constitution, Article V, § 18(d)(1), which provides that a judicial officer who fails to perform the duties of office is subject to discipline (Count 4A).

Likewise, Respondent's transfer of the Solomon case to Magisterial District Judge Bruno's court was a violation of Rules 5 and 13 as well as of Article V, § 17(b) and § 18(d)(1) (Findings of Fact Nos. 22–25). Moreover, Respondent knew this action was in direct contravention of the Chester County administrative rules which require that a transferring court obtain an order from the President Judge of Chester County in order to accomplish a transfer (Finding of Fact No. 24).

■ Respondent's subsequent conduct during the investigations conducted by the president judge and then by the Judicial Conduct Board, which included presenting a report to the president judge in which she made false statements (Finding of Fact No. 29), e.g., she stated that she did not timely docket the Solomon citation because she completely forgot about that citation because of the noxious fume problem in her office at the time (Finding of Fact No. 29). However, investigation of all the citations filed in Respondent's court during the noxious fume problem established that the only citation docketed late was the Solomon citation (Finding of Fact No. 28). Later, during the Board's investigation of the case when Respondent learned that the Board had scheduled the deposition of Patricia Davis, Respondent's office manager, Respondent instructed Davis to testify falsely at the deposition concerning when Davis first knew that the Solomon citation had been filed in Respondent's court. Respondent instructed Davis to testify that she first learned that the Solomon citation had been filed in Respondent's court on April 5, 2010, when, in reality, Davis first learned of it in February 2010, and Respondent knew this to be the truth because that was when Respondent handed the citation to Davis and told her to "hold on to it" and not to docket it until Respondent told her to docket it (Finding of Fact No. 17).

Again, this latter conduct is, unmistakably, in conflict with:

(a) her duty to diligently discharge her administrative responsibilities and to facilitate the performance of the administrative responsibilities of her staff (Rule 5) (Count 1),

(b) her duty not to engage in any activity or act incompatible with the expeditious, proper and impartial discharge of her duties (Rule 13) (Count 2).

Since her conduct during the investigations, described above, was a violation of Rules 5 and 13 of the Rules Governing Standards of Conduct of Magisterial District Judges, it was an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution.

In addition, that conduct also is such that "prejudices the proper administration of justice," which, under Article V, § 18(d)(1) of the Pennsylvania Constitution, subjects Respondent to discipline. This Court has been called upon frequently to determine whether particular conduct is such that "prejudices the proper administration of justice." *See, In re Cioppa,* 51 A.3d 923, 930 (Pa.Ct.Jud.Disc.2012) and cases cited therein. As those cases demonstrate, we have held repeatedly that:

A judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some neglect or impropriety, but also acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example, by affecting a specific outcome.

*In re Smith,* 687 A.2d 1229, 1238 (Pa.Ct. Jud.Disc.1996). There is no question that when Respondent presented her report about her failure to docket the Solomon complaint in compliance with the pertinent procedural rules, and when she spoke to her office manager about how she should testify at her deposition scheduled by the Board in the course of its investigation, that she was "act[ing] with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example, by affecting a specific outcome." There is no question that Respondent was acting to affect the out-

come in this case—her case—which was being investigated by her president judge and by the Judicial Conduct Board. It is clear, then, that Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution for engaging in conduct which prejudices the proper administration of justice (Count 4B).

## IV. CONCLUSIONS OF LAW

1. Respondent's conduct set out in Findings of Fact Nos. 1–28 is:

   (a) a violation of Rule 5 of the Rules Governing Standards of Conduct of Magisterial District Judges,

   (b) a violation of Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges,

   (c) as a violation of the aforesaid Rules 5 and 13, it is an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution,

   (d) such that constitutes a failure to perform the duties of office which is a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

2. Respondent's conduct set out in Findings of Fact Nos. 29–32 is:

   (a) a violation of Rule 5 of the Rules Governing Standards of Conduct of Magisterial District Judges,

   (b) a violation of Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges,

   (c) as a violation of the aforesaid Rules 5 and 13, it is an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution,

   (d) conduct which prejudices the proper administration of justice which is a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

3. Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.