**IN RE: Kenneth MILLER, Former Senior Magisterial District Judge**

**No. 8 JD 15**

Court of Judicial Discipline of Pennsylvania.

Date: June 1, 2016

BEFORE: Honorable Robert J. Colville, P.J., Honorable Jack A. Panella, J, Honorable John J. Soroko, J., Honorable David J. Shrager, J., Honorable David J. Barton, J.

## OPINION BY JUDGE DAVID BARTON

Respondent Kenneth Miller (Respondent Miller), a former Senior Magisterial District Judge, appears before this Court in response to a Complaint filed by the Judicial Conduct Board. The Complaint contains two counts, to wit; Count 1—alleging a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution for former Senior MDJ Miller's felony conviction in federal court, and; Count 2—alleging a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution for bringing the judicial office into disrepute.[1] These charges arise from Respondent Miller's attempting to influence the outcome of a case in Philadelphia Traffic Court.

---

1. The Judicial Conduct Board has not charged any violations of the MDJ Rules of Conduct, so this Court need not focus on the fact that the Rules in effect at the time of the

## FINDINGS OF FACT

1. Article V, § 18(b) of the Pennsylvania Constitution established this Court and grants it the authority to adjudicate cases against Pennsylvania justices, judges, and magisterial district judges.

2. Article V, § 18(a) of the Pennsylvania Constitution grants to the Judicial Conduct Board the authority to determine whether there is probable cause to File formal charges against a judicial officer in this Court, and thereafter, to prosecute the case in support of such charges in this Court.

3. After Respondent Miller retired from his service as a commissioned magisterial district judge, he was certified to serve as a senior magisterial district judge from January, 2006, until his resignation from senior status on January 7, 2013.

a. Respondent Miller served as a magisterial district judge when appointed by the Supreme Court of Pennsylvania.

b. While a senior magisterial district judge, Respondent Miller was assigned to the Philadelphia Traffic Court for approximately one year, leaving in 2008.

c. During time periods relevant to this matter, the Respondent was appointed by the Supreme Court of Pennsylvania to active judicial service for the following periods:

1. January 1, 2011 through June 30, 2011;

2. August 1, 2011 through August 31, 2011;

3. January 1, 2012 through January 31, 2012;

4. June 1, 2012 through July 31, 2012;

---

conduct did not explicitly apply to a senior judge not actively serving a judicial assignment. This apparent oversight has been corrected in the current Rules of Conduct.

5. October 1, 2012 through October 31, 2012;

6. December 1, 2012 through December 31, 2012.

4. The court orders assigning Respondent Miller to the particular assignments listed above provided that he "shall have the same jurisdiction and authority as one elected and qualified to serve in said magisterial district."

5. As a senior magisterial district judge either eligible for assignment or actively serving such an assignment, Respondent Miller was subject to all the duties and responsibilities imposed on him by the Constitution of the Commonwealth of Pennsylvania and the Rules Governing Standards of Conduct of Magisterial District Judges.

6. Prior to his resignation from senior status, Respondent Miller was the subject of a federal grand jury investigation regarding his participation in the practice of giving favorable treatment in traffic court cases to certain defendants based upon *ex parte* requests.[2]

7. On January 31, 2013, in a case filed in the United States District Court for the Eastern District of Pennsylvania, captioned *United States v. Kenneth Miller*, at Docket No. 2:13–cr–00046–RK, Respondent Miller was charged by criminal information with one felony count of Mail Fraud,[3] for his act of using the mails between December 2010 and February 2011 to attempt to influence a case pending in Philadelphia Traffic Court.

8. On February 12, 2013, before the Honorable Robert F. Kelly, United States District Judge, Respondent Miller waived his right to indictment by grand jury and pleaded guilty to one felony count of Mail Fraud pursuant to a guilty plea agreement.

9. The exact conduct as recited by the prosecutor at the guilty plea colloquy, and admitted by Respondent Miller, in pertinent part, is as follows:

Kenneth Miller, was a district judge in Delaware County from 1970 till [*sic*] approximately 2006, then took on senior judge status and was assigned to the Philadelphia Traffic Court for approximately one-year, leaving in early 2008. As a Philadelphia Traffic Court judge he presided over and adjudicated traffic tickets for moving violations in Philadelphia and became aware of the way Philadelphia Traffic Court ran....

We would present testimony [that] on December 11, 2010, a person whose initials are J.B. received a traffic ticket for making an improper left turn causing an accident here in Philadelphia. The ticket carried a potential fine of $25 and costs of $126.50.

J.B. gave that ticket to his mother, M.D. who was a court clerk in Delaware County and asked for advice on how to handle it. She in turn talked to then Judge Miller about the ticket, gave the defendant her son's name, the day of the hearing and a copy of the citation. Judge Miller told her that he would look into it.

Between December 11, 2010, and February 14 of 2011, defendant Miller mailed the ticket to William Hird who was an administrator in Philadelphia Traffic Court, identified the ticket as belonging to the son of the Delaware County clerk. He later told us that he was hoping for some sort of reduction on this ticket.

---

**2.** After this investigation and its ensuing indictments were revealed publically, this practice became known or referred to by the FBI and many others as "special consideration."

**3.** 18 U.S.C. § 1341.

On February 2, 2011, Mr. Miller called William Hird, left a message on his answering machine which was recovered by a court ordered wiretap, and identified himself as K.M. from Delaware County.

He left a message that he had been called by J.B. regarding a notice that he received from the division, indicated that he and Hird talked about this ticket before. Mr. Miller than provided a citation number and asked Mr. Hird to check on the citation. Mr. Miller acknowledged that J.B. had a meeting scheduled on February the 14th of 2011 at 1:00.

During that same time period between December 11, 2010 and February 14 of 2011 Mr. Miller called M.B. and told her that her son should not go to a court hearing and that he should not worry about the traffic ticket.

On February 14 of 2011, Philadelphia Traffic Court Judge Willie Singletary, found J.B. not guilty despite the fact J.B. never appeared in court and never raised a defense to the charges in the ticket.

Bd. Ex. "6" at 15.

10. On January 5, 2015, United States District Judge Kelly sentenced Respondent Miller to one year of probation, plus a $100.00 assessment, and a $1,000.00 fine.

11. Respondent Miller's felony conviction arises from his acts during a period of time during which he was either actually serving judicial assignments, or he was otherwise eligible for such assignment.

### DISCUSSION

Respondent Miller admits his criminal conduct but sets forth in his Answer that:

[Respondent Miller] was not an active or appointed Senior District Justice [*sic*] at the time of the acts set forth in the information filed against him and to which he pled guilty and therefore he had no duty or responsibility as a judge and was not violative of Article V, § 18(d)(1) . . . .

Ans. at Para. 9.

### A. JURISDICTION AND AUTHORITY OF THE COURT OF JUDICIAL DISCIPLINE.

■ Respondent Miller's Answer, and letter brief submitted on April 20, 2016, raises a jurisdictional challenge to this Court's ability to hear and decide this case. Respondent Miller argues that he is not subject to the jurisdiction and authority of the Court of Judicial Discipline because he was not a senior magisterial district judge at the time of the alleged misconduct.[4] Respondent Miller's argument is that the acts leading to the conviction did not occur while Respondent Miller was acting as a senior magisterial district judge. The act giving rise to the federal conviction was his use of the U.S. Mail to transmit an attempt to influence a case pending in Philadelphia Traffic Court. According to the guilty plea colloquy by the Government, Respondent Miller mailed the ticket to William Hird "[b]etween December 11, 2010, and February 14, 2011." The record in this matter does not reflect that Respondent Miller was assigned to actual judicial service in December, 2010. Thus, Respondent Miller's argument concludes that Respondent Miller was not a "judge" on December 11, 2010, or at the time of his conviction on January 5, 2015, and is

---

4. This court's case law has consistently interpreted a claim that the judicial officer is not subject to the Constitution, Canons, or MDJ Rules of Conduct, as a challenge to the Court's subject matter jurisdiction and power to compel a particular result. *In re Melograne*, 571 Pa. 490, 812 A.2d 1164, 1166–67 (2002).

therefore not subject to the provisions of Article V, § 18(d) of the Pennsylvania Constitution.

 This proposition fails on a number of levels. First, it is beyond question that this Court has jurisdiction to adjudicate charges filed by the Judicial Conduct Board against a jurist. *See In re Bruno,* 627 Pa. 505, 101 A.3d 635, 661–662 (2014). This Court's jurisdiction continues after a judge has left office. *See In re Ciavarella,* 108 A.3d 983, 987 (Pa.Ct.Jud.Disc. 2014). Respondent Miller's claim is essentially that this Court lacks subject matter jurisdiction because he was not in active judicial service at the time he committed the acts leading to his federal criminal conviction, or at the time of the January 5, 2015 conviction itself. This conclusion can only be reached through an unduly narrow reading of the case law conferring power on the Court of Judicial Discipline, and an equally unsupportable characterization of the criminal conviction.

It has long been decided that senior judges, whether on a period of active judicial service or merely eligible for such an assignment, have submitted themselves to the proscriptions of Article V, § 18 of the Pennsylvania Constitution, In the case of *In re Cain,* 527 Pa. 260, 590 A.2d 291 (1991), our Supreme Court held that the voluntary act of a judge to hold himself or herself out as being available for a temporary judicial assignment renders himself or herself subject to the disciplinary provisions of the Pennsylvania Constitution. In this regard, eligibility for judicial service is a voluntary act by an otherwise retired jurist, and the ability to receive such assignments and hold oneself out as a "senior judge" carries with it a concomitant obligation to continue to be bound by the Constitution, and Canons or Rules Governing Standards of Conduct of Magisterial District Judges. We can perceive of no lesser duty in order to uphold the ethical standards of the Pennsylvania Judiciary.

Secondly, Respondent Miller's argument ignores that he was actually assigned to judicial service during at least one of the acts involved with his attempt to influence the case in Philadelphia Traffic Court. The Board's Exhibit 6, introduced at trial, includes orders of the Supreme Court assigning Respondent Miller to periods of actual judicial service in several Delaware County Magisterial Districts beginning on January 1, 2011, and extending continuously through June 30, 2011. It was during this period, on February 2, 2011, when Respondent Miller placed a telephone call to William Hird in order to follow up on his earlier request to influence a case In Philadelphia Traffic Court that had been sent to Hird by U.S. Mail.

We find a sufficient nexus here between Respondent Miller's actual judicial service and his conviction for Mail Fraud to conclude that the Court of judicial Discipline has jurisdiction over Respondent Miller.

## B. RESPONDENT MILLER'S FEDERAL FELONY CONVICTION.

 As recited above, Respondent Miller became a convicted felon when he was sentenced on January 25, 2015. The record as presented to this Court does not identify with specificity when Respondent Miller mailed the copy of the traffic citation to PTC beyond stating that it occurred some time between the date the citation was issued on December 11, 2010, and February 14, 2011. Whether it was mailed during December, 2010, when Respondent Miller was not assigned to an active senior assignment, or in January or February, 2011, when Respondent Miller was assigned to active judicial service, is not material here because Respondent Miller was nevertheless subject to the provisions of Article V, § 18 of the Pennsylvania Con-

stitution during all of these months. The record does, however, reflect the specific date upon which Respondent Miller made the telephone call to PTC administrator William Hird that was intercepted by a court-ordered wiretap. In the message, Respondent Miller sought to alert Hird that the case about which they had an earlier *ex parte* discussion was nearing its trial date. That telephone call was intercepted on February 2, 2011. Respondent Miller was actively engaged in a judicial assignment during the month of February, 2011. Moreover, the defendant in that traffic case, identified in the federal indictment by his initials J.B., was found not guilty irrespective that he never appeared in court on February 14, 2011, the day of his trial. Thus, it is evident that Respondent Miller engaged in acts in furtherance of his successful attempt to influence the case in PTC during a period of active judicial service. We find a sufficient connection between the felony conviction and Respondent Miller's acts during his actual judicial service in February, 2011, to support the finding of a violation of the Pennsylvania Constitution without even considering his actions during January, 2011.

Accordingly, Respondent Miller is found to have violated Count 1—Article V, § 18(d)(1) of the Pennsylvania Constitution by incurring a felony conviction.

## C. BRINGING THE JUDICIAL OFFICE INTO DISREPUTE.

▮ The determination of whether particular conduct brings the judicial office into disrepute must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed. *In re Cicchetti,* 697 A.2d 297, 312 (Pa.Ct.Jud.Disc. 1997). This Court has typically concluded that actions which prejudice the administration of justice or go to the sanctity of the judicial process bring the judicial of-

fice, and not just the offending judge, into disrepute.

In considering Count 2—the allegation that his actions brought his judicial office into disrepute, Respondent Miller is also in violation. In multiple cases, a judicial officer found to have tried to improperly influence a court proceeding concerning a traffic offense was found to have brought the judicial office into disrepute. *See, e.g., In re Kelly,* 757 A.2d 456 (Pa.Ct.Jud.Disc. 2000); *In re Trkula,* 699 A.2d 3 (Pa.Ct.Jud.Disc. 1997). The same finding is applicable here. Respondent Miller took actions to improperly cause favorable treatment in court for the son of a friend. His conviction for Mail Fraud arises from acts committed during actual judicial service. Lastly, the acts leading to the conviction were intended to, and did, violate the sanctity of the judicial process. These actions, especially when considered together, engendered disrepute for all Pennsylvania jurists and the judicial office itself.

We find clear and convincing evidence that Respondent Miller is in violation of Counts 1 and 2 against him and should be sanctioned.

## CONCLUSIONS OF LAW

1. Respondent Miller is subject to the jurisdiction and authority of the Court of Judicial Discipline for the acts complained of in the Complaint.

2. Respondent Miller committed a violation of Article V, § 18(d)(1) of the Constitution of the Commonwealth, Pennsylvania in that he was convicted of a felony.

3. Respondent Miller committed a violation of Article V, § 18(d)(1) of the Constitution of the Commonwealth of Pennsylvania in that his actions have brought the judicial office into disrepute.

Either party may file written objections within ten (10) days of this Opinion.