930 A.2d 1255

**In re Allan Clifford BERKHIMER, District Justice in and for Magisterial District 47–3–06 Cambria County.**

Supreme Court of Pennsylvania.

Argued May 9, 2006.

Decided Aug. 20, 2007.

Robert Howard Davis, Jr., Harrisburg, for Allan Clifford Berkhimer.

Joseph A. Massa, Jr., Harrisburg, for Judicial Conduct Bd.

CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## OPINION

Justice EAKIN.

Appellant, Allan Clifford Berkhimer, previously a Magisterial District Judge for Magisterial District 47–3–06 in Cambria County, appeals the decision of the Court of Judicial Discipline removing him from office.[1] For the reasons discussed below, we hold appellant's conduct warrants his removal from office.

---

1. This matter is directly appealable to this Court by virtue of Article V, § 18(c)(1) of the Pennsylvania Constitution. Appellate review of the Court of Judicial Discipline is governed pursuant to rules the Supreme Court promulgated, 207 Pa.Code, Rule 506.

Appellant became a Magisterial District Judge in January, 1988. *In re: Berkhimer,* 877 A.2d 579, 582 (Pa.Ct.Jud.Disc. 2005). In August, 2002, Daphne Moot applied for employment in appellant's office, which employed two other women; Karen Roberts and Diane Weaver. During her job interview, which Roberts attended, appellant said to Moot, "I am not a political whore. I don't kiss anybody's ass unless pussy's involved." *Id.* Appellant made an equally offensive and inappropriate statement during Moot's second interview.[2] Moot accepted a job offer despite appellant's conduct.

Moot was not the only target of appellant's sexually charged comments. In 2003, appellant told Weaver, in front of her colleagues, that he relayed her sexual interest in a police officer to that officer at an official function. Weaver made no such request and was embarrassed. On more than one occasion, appellant invited the three women to look at pornographic images on his computer. In one instance, the image was evidence from a child pornography case before his court. When Moot refused to view the image, appellant described it to her in graphic detail, despite her protests.

Appellant also instructed his staff to scour the local weekly newspaper to look for constituents mentioned for their achievements. The staff then prepared and sent congratulatory notes, called "Quickie Notes." The notes included a photograph of appellant in his robe and bore the court's address. Appellant did not always know the constituents, nor were they related to the court's business. Appellant admitted the notes' purpose was to "get votes." Although appellant's retention election was several years away, this practice effectively constituted a continuous re-election campaign.

Moot quit in June, 2003, citing appellant's vulgarity, sexual connotations, and frequent use of expletives as part of her reason for leaving. Weaver also left the office in October, 2004. Roberts continued her employment.

**2.** Appellant's conduct is fully described in the Court of Judicial Discipline's opinion. *In re: Berkhimer,* 877 A.2d 579 (Pa.Ct.Jud.Disc.2005).

In June, 2004, the Judicial Conduct Board charged appellant under Article V, § 18 of the Pennsylvania Constitution.[3] The Board's complaint consisted of two parts. Part A, titled "Indecorous Language and Behavior Unbecoming a Judicial Officer," arose from complaints that appellant used inappropriate and offensive language with his staff and others. Part B, titled "Improper Use of County Employees, Equipment and Funds," concerned appellant's practice of using office resources to send "Quickie Notes."

Pursuant to Article V, § 18 of the Pennsylvania Constitution and Rule 501 of the Court of Judicial Discipline Rules of Procedure, a three-judge panel was appointed and conducted a trial in December, 2004. The court examined eight instances of offensive language and inappropriate conduct. It heard from Moot, Weaver, and Roberts, as well as witnesses testifying on appellant's behalf. The court determined Moot's, Weaver's, and Roberts' testimony to be wholly consistent, credible, and believable. While appellant denied and minimized the allegations, the court found his denials unbelievable, and his minimizations to show a remarkable lack of taste and integrity. Appellant admitted to showing pornographic images on his computer, but he did not consider doing so offensive, inappropriate, or embarrassing. Appellant attempted to cast his language and sexually charged statements as not offensive. However, the court found the statements to be "boldly disrespectful [and] pointedly designed to embarrass...." *Id.*, at 587. Appellant presented medical testimony of his affliction with sleep apnea and argued this constituted a mitigating factor.

The Court of Judicial Discipline determined the Judicial Conduct Board, by clear and convincing evidence, proved the allegations occurred, that they were highly offensive, and that appellant exhibited inappropriate conduct. *Id.*, at 588. The court concluded appellant's behavior violated Article V of the Pennsylvania Constitution and the Code of Judicial Conduct. The court held appellant's conduct brought the judicial office

---

**3.** The record does not explain how the Board became aware of these incidents, but that is not essential to our review of the decision.

into disrepute, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution. The court also held appellant failed to be patient, dignified, and courteous to his staff, violating Rule 4C of the Rules Governing Standards of Conduct of District Justices.

Additionally, the court found appellant violated Rule 3B of the Rules Governing Standards of Conduct of District Justices when he required his staff to look for opportunities to send congratulatory notes to constituents. The court noted, and appellant admitted, that sending the notes constituted an ongoing re-election campaign, done solely to "get votes." *Id.,* at 596. The court found appellant's use of court-appointed staff constituted partisan political activity and violated the Supreme Court's guidelines on unapproved political activities. *Id.* The court added the "Supreme Court did not intend to approve the conduct of political campaigns out of magisterial offices with court-appointed employees." *Id.*

■ The court found appellant violated both statutory and constitutional standards of judicial conduct. "[A] finding by [the Court of Judicial Discipline] that a judicial officer has violated the Constitution of Pennsylvania or the Code of Judicial Conduct subjects that judge to the full range of appropriate discipline, [including removal]." *In re: Zupsic,* 893 A.2d 875, 896 (Pa.Ct.Jud.Disc.2005). Pursuant to Article V, § 18 and 42 Pa.C.S. § 3331, a seven-judge panel reviewed the court's findings and removed appellant from office. Appellant appealed to this Court.

Article V, § 18 of the Pennsylvania Constitution governs our review of a determination of the Court of Judicial Discipline. We "review the record of the proceedings of the [Court of Judicial Discipline] as follows: on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and, as to sanctions, the scope of review is whether the sanctions imposed were lawful." Pa. Const. art. V, § 18(c)(2); *In re Melograne,* 571 Pa. 490, 812 A.2d 1164, 1166 (2002).

■■ Judicial conduct proceedings have been held to be quasi-criminal in nature; thus, the defendant is granted con-

stitutional rights afforded to criminal defendants. *In re Chiovero*, 524 Pa. 181, 570 A.2d 57, 61 (1990). The Judicial Conduct Board is responsible for investigating and bringing charges, and at trial, the board must prove the charges by clear and convincing evidence. *In re Cicchetti*, 560 Pa. 183, 743 A.2d 431, 443 (2000). In considering whether the evidence presented is clear and convincing, the court must find the witnesses to be credible, and the facts and details to be distinctly remembered. *Id.* The witnesses' testimony must be sufficiently clear, direct, weighty, and convincing. *Id.*

Appellant does not dispute the court's fact-finding; the only question is whether the court committed a legal error. The Pennsylvania Constitution expresses the importance of integrity in the judicial system. Article V provides:

A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for conviction of a felony; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court.

Pa. Const. art. V, § 18(d)(1). The Court of Judicial Discipline defined disrepute as "necessarily incorporat[ing] some standard with regard to the reasonable expectations of the public of a judicial officer's conduct." *In re Strock*, 727 A.2d 653, 657 (Pa.Ct.Jud.Disc.1998). Whether particular conduct brings the judicial office into disrepute is determined on a case-by-case basis. *In re McCarthy*, 828 A.2d 25, 29 (Pa.Ct.Jud.Disc.2003).

This Court upheld decisions that found disrepute was brought upon the judicial office when actions took place in or outside court proceedings. *Zupsic* (disrepute onto judicial office found in attempts to influence trial outcomes); *Cicchetti* (disrepute onto judicial office found when judge behaved improperly to litigants and female staff). Here, appellant's conduct occurred in the office, during working hours, and his

staff had no choice but to endure his conduct. Appellant's offensive conduct cannot be separated from his judicial position.

In *Zupsic*, the court noted a judge's conduct reflects not only upon the judge but also upon the judicial office itself:

[T]he conduct of a judge which results in a decline in the public esteem for that judge, may not support the conclusion that the conduct has brought the judiciary as whole into disrepute, absent a persuasive showing by the Board that the conduct is so extreme as to have brought the judicial office itself into disrepute.

*Zupsic*, at 888. When appellant interviewed Moot, he did not just elicit information from her as a potential employee; he represented the judicial office to a member of the public. Appellant's unwarranted and offensive statement during an interview reflected poorly on the judiciary as a whole. This event was disrespectful to the judiciary and public; combined with his offensive behavior, it brought disrepute on the entire judiciary.

Moot, Weaver, and Roberts were subjected to expletive-filled language on a daily basis, as well as offensive comments intended to embarrass. To Moot, Weaver, and Roberts, appellant was not a colleague with bad taste and behavior; he was their boss, robed with the official stamp of approval from the judicial branch.

In addition to the Pennsylvania Constitution, the Code of Judicial Conduct, promulgated by this Court, guides judicial conduct. This Court described the fundamental purpose of the Code of Judicial Conduct as ensuring the judiciary's independence and integrity. *Cicchetti*, at 441. The first canon of judicial conduct provides "An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing, and should themselves observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved . . . . " Code of Judicial Conduct, Canon 1. Just as the public expects judicial servants to exhibit appropriate and

respectful behavior, so too may employees of court. The public would not find appellant's behavior acceptable and neither do those working in a small office under a boss who wields the power of employment.

Appellant argues this Court should reduce the sanction of removal from office because medical testimony of his affliction with sleep apnea represented a mitigating factor, justifying a less severe sanction. In *In re Timbers*, 674 A.2d 1221 (Pa.Ct. Jud.Disc.1996), the court considered charges of misconduct in office, neglecting the duties of office, prejudicing the proper administration of justice, and bringing the judicial office into disrepute. It found alcohol abuse and alcoholism underlying the judge's conduct. While not condoning alcoholism as an excuse for misconduct, the court recognized alcoholism as a disease, which could be considered a mitigating factor. It suspended the judge for six months without pay and required him to attend a sobriety-monitoring program.

As the trier-of-fact, the Court of Judicial Discipline considered this medical testimony and discovered sleep apnea could possibly contribute to appellant's offensive statements and behavior, but found the suggestion fell short of linking actual causation to his behavior. The court also distinguished between a diagnosed medical condition, and the suggestion that sleep apnea could contribute to or cause aberrant behavior.

▪ Appellant also argues the court did not give mitigating factors, such as medical evidence and good character letters, sufficient weight. However, appellant misapprehends our standard of review. The existence of good character evidence does not undo appellant's offensive behavior. Disciplinary sanctions focus beyond the one who is charged, to the message sent to the public and the effect on the expectation of standards of behavior. "[D]isciplinary sanctions ... are intended to protect the public ... and maintain the integrity of the legal system." *In re Melograne*, 585 Pa. 357, 888 A.2d 753, 755 (2005). While some similarities exist between the behavior in *Timbers* and this matter, the purpose of our review is not to re-weigh the sanction against aggravating or

mitigating circumstances, but to determine whether the sanction is lawful. The Court of Judicial Discipline is charged with protecting the integrity of the judiciary and upholding public confidence in the judicial branch of government. *Melograne*, 812 A.2d at 1168–69. "In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct." *Id.*, at 1168.

■ The Pennsylvania Constitution, art. V, § 18, sets forth removal as an available sanction for bringing disrepute upon the judicial office. Here, removal is a permissible sanction for appellant's conduct, and the findings are supported by clear and credible evidence. Thus, the sanction is lawful.[1]

Order affirmed. Jurisdiction relinquished.

Justice BALDWIN did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Justice SAYLOR joins the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice BAER files a concurring opinion in which Justice CASTILLE joins.

## CONCURRING OPINION

Chief Justice CAPPY.

I join the majority opinion but specifically disassociate myself from the debate over note writing engaged in by the concurring opinions, which is obiter dicta.

**4.** In light of this finding, we conclude it unnecessary to review whether appellant's practice of using his staff to send congratulatory notes to constituents violated Rule 3B of the Rules Governing Standards of Conduct of District Justices.

## CONCURRING OPINION

Justice CASTILLE.

I join the Majority Opinion in its entirety. I write separately, however, because I would also address the second charge lodged against appellant—to wit, that he conducted an ongoing campaign for re-election by instructing his employees to send congratulatory notes to constituents concerning their achievements—in order to illustrate the appropriateness of the severe sanction of removal from office.

It is beyond purview that a Magisterial District Judge may not use his employees to conduct an on-going retention campaign on his behalf. *In re Cicchetti*, 560 Pa. 183, 743 A.2d 431 (2000). In *Cicchetti*, this Court recognized that requiring court employees to participate in such activity undermines public confidence in the judiciary:

> [W]e recognize that permitting court-appointed employees to participate in the retention election campaigns of judicial officers may create the appearance of impropriety. This Court has held that the prohibition against partisan political activity is to "maintain not only the independence, integrity and impartiality of the judicial system but also the appearance of these qualities." *[In re]* Dobson, 517 Pa. [19,] 29, 534 A.2d [460,] 465 [ (1987) ], citing, *In re Prohibition of Political Activities by Court–Appointed Employees*, 473 Pa. 554, 560, 375 A.2d 1257, 1259 (1977). We believe that this goal, which is fundamental to public confidence in the judiciary, can best be met by extending the prohibition against political activity to judicial retention elections. Accordingly, court-appointed employees may no longer participate in judicial retention election campaigns.

*Id.* at 442.

Appellant does not contest that the purpose of having his staff glean opportunities to send congratulatory notes, and then actually sending the notes, was for the sole purpose of enhancing his likelihood of retention when his term expired several years later. Rule 15C of the Standards of Conduct of Magisterial District Judges permits a magisterial district judge to campaign on his own behalf or otherwise engage in

the political process only in the year of his retention election. The necessity of reelection, combined with this restriction, undoubtedly leads to the temptation to engage in activities designed to garner votes in ways other than overt and timely campaigning. Nonetheless, such activity is clearly and rightly prohibited. Judicial officers should satisfy themselves with the knowledge that this salutary restriction is offset by the fact that a sitting district judge has the distinct advantage of incumbency. In violation of Rule 15C, appellant campaigned for retention throughout his term of office. Appellant's improper electioneering provides further support for the sanction of removal.

## CONCURRING OPINION

Justice BAER.

I join the majority in its entirety. I agree that Appellant's conduct towards his staff involving the use of improper and offensive language warrants his removal from office. I write separately in response to the concurring opinion by Justice Castille, which addresses the second charge lodged against Appellant. This charge relates to Appellant's practice of sending congratulatory notes by mail to constituents who were mentioned in the local newspaper for an accomplishment. Justice Castille characterizes this practice as an on-going reelection campaign, and upon that premise correctly deems this activity improper. While I agree that the Court of Judicial Discipline's factual findings dictate such result, I feel compelled to write separately to state my view that other instances of community outreach, which are not for the sole purpose of electioneering, are entirely permissible and even laudable.

As the majority notes, Appellant, a Magisterial District Judge, instructed his staff to read local newspapers to look for constituents mentioned for their achievements. The staff then prepared a congratulatory note, which included a photograph of Appellant in his robe and bore the court's address. Appellant testified that he had his staff send these notes because people appreciate being recognized for their achievements,

and they advanced other civic activities in which he participated. N.T., 12/16/2004, at 411. Appellant's staff, however, testified that Appellant told them that the purpose of the congratulatory notes was to obtain votes. N.T., 12/16/2004, at 36, 101. The Court of Judicial Discipline credited the testimony of Appellant's staff and found that Appellant's testimony was not credible. Thus, the court found that the purpose of the congratulatory notes was solely to curry favor with electors in order to improve Appellant's prospects for reelection. Court of Judicial Discipline Op. at 28. The court further concluded that Appellant was prohibited from using his staff to send the congratulatory notes to constituents for the purpose of seeking votes for reelection pursuant to Rule 3B of the Rules Governing Standards of Conduct of District Justices, and that these actions warranted his removal from office.[1]

We are constrained to defer to the court's factual finding in this case that Appellant's purpose in sending congratulatory notes was solely for furthering his reelection as opposed to a genuine desire to recognize civic achievements. *See Commonwealth Dept. of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873, 875 (1989). I caution, however, that the conclusion reached in this case based upon such a finding should not be read as a blanket prohibition of the range of benign activities that judicial officers routinely engage in as public officials who sincerely desire to interact with the community for its betterment as well as that of the judiciary. Some of these activities, such as personally welcoming jurors beginning their service, thanking jurors, either personally or by letter, at the conclusion of their service, dropping notes of thanks or congratulations to individuals who achieve some significant success or milestone in our society, delivering remarks to community groups, accepting a small award, and the like, are entirely permissible so long as they are undertaken without ulterior

1. Rule 3B of the Rules Governing Standards of Conduct of District Justices provides:

 A district justice shall not use or permit the use of the premises established for the disposition of his magisterial business for any other occupation, business, profession or gainful pursuit.

motive, regardless of the potentiality of some ephemeral benefit that one might speculate could inure to a judge. Rather, I believe that we should encourage judicial officials to reach out to the public in a positive way, instead of creating a climate in which judges shun such activities for fear of judicial discipline.

Finally, I find it obvious that judicial misconduct should not be alleged against a judicial officer who uses his or her staff to assist in proper community outreach. To hold otherwise would be to ignore the reality that judicial officers are overwhelmingly busy, and require staff support for all administrative and clerical functions. In short, if the activity is appropriate for the judicial officer, it is altogether proper to use his or her staff in furtherance of the activity.

Justice CASTILLE joins this concurring opinion.