**IN RE: Angeles ROCA, First Judicial District Philadelphia County**

**No. 14 JD 15**

Court of Judicial Discipline of Pennsylvania.

FILED: December 16, 2016

---

Honorable Robert A. Graci, Chief Counsel, Judicial Conduct Board

Elizabeth A. Flaherty, Deputy Counsel

Samuel C. Stretton, Esquire

BEFORE: Honorable Jack A. Panella, P.J., Honorable John J. Soroko, J., Honorable David J. Shrager, J., Honorable David J. Barton, J., Honorable Doris Carson Williams, J., Honorable Jeffrey P. Minehart, J.[1]

1. Judge Minehart did not participate in this case.

## OPINION

### FILED BY PRESIDENT JUDGE JACK A. PANELLA

The Judicial Conduct Board (Board) filed a Complaint with this Court on December 18, 2015, against Angeles Roca (Respondent), a Judge on the Philadelphia Court of Common Pleas. Following a petition filed by the Board, the Respondent was suspended without pay on January 13, 2016. A trial was held before a panel of three judges of this court, and the Respondent was adjudicated to have violated the following canons and constitutional provisions:

a violation of former Canon 2A of the Code of Judicial Conduct;

a violation of former Canon 2B of the Code of Judicial Conduct;

a violation of Article V, § 18(d)(1) of the Constitution of the Commonwealth of Pennsylvania, conduct such that brings the judicial office into disrepute;

a violation of Article V, § 18(d)(1) of the Constitution of the Commonwealth of Pennsylvania, conduct such that prejudices the proper administration of justice; and

an automatic, derivative violation of Article V, § 17(b) of the Constitution of the Commonwealth of Pennsylvania, inasmuch as it has been found that Respondent's conduct constitutes a violation of former Canons 2A and 2B of the Code of Judicial Conduct.

Basically, we concluded that the conduct of Judge Roca, by way of her knowingly accepting the offer of former Judge Waters to make *ex parte* contacts with another judge to influence her decision in a case involving Respondent's son, supported the findings outlined above. The record was replete with references to intercepted

phone calls between former Judge Waters and Respondent. These were clear, overt, and *ex parte* steps taken to influence the case in favor of Respondent's son. .

The Respondent filed a motion to waive objections and exceptions to the adjudication of the Court which had been filed on October 20, 2016. A hearing on sanctions was held on November 21, 2016, which was attended by the Respondent and her counsel as well as counsel from the Judicial Conduct Board. The Respondent testified and submitted a brief on sanctions as well as a statement of witnesses. Additionally, the Respondent's sister, Milagros Roca, her judicial secretary, Elsie Echevarria, and her judicial law clerk, Virginia Jutierrez, testified. Lastly, the Respondent requested that we incorporate the testimony from the character witnesses who appeared at the time of trial, as well as a number of letters received on Respondent's behalf.

We have said before that our judicial system should stand as the symbol of fairness and justice, and of equal protection dispensed to every citizen. We have also said that no type of corruption is tolerable in the Pennsylvania judiciary.

The Pennsylvania Constitution provides sanctions available to the Court which include removal from office, suspension, fine, censure, and public or private reprimand.[2] When dealing with judicial misconduct, this Court has recognized that the sanction should fit the misconduct.

Article V, § 18 of the Pennsylvania Constitution governs the review of our decisions. The Pennsylvania Supreme Court must review the record of the proceedings of the Court of Judicial Discipline: "on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and, as to sanctions, the scope of review is whether the sanctions imposed were lawful." **Pa. Const. art. V, § 18(c)(2);** *In re Berkhimer,* 593 Pa. 366, 371, 930 A.2d 1255, 1258 (2007)

## FACTORS CONSIDERED ON SANCTIONS

■ The Supreme Court of this Commonwealth is the sole authority on the issue of sanctions, and we take our guidance from that Court as well as from prior opinions of this Court. In *In re Toczydlowski,* 853 A.2d 24 (Pa.Ct.Jud.Disc. 2004), in considering the appropriate sanction, we made reference to *In re Deming,* 108 Wash.2d 82, 736 P.2d 639 (1987), a case decided by the Supreme Court of Washington, and we adopted that court's ten nonexclusive factors in fashioning an appropriate sanction. Our review of these factors in this case is as follows:

(a) Whether the misconduct is an isolated instance or evidenced a pattern of conduct: The misconduct giving rise to the charges In this case involves a single matter in which the Respondent knowingly agreed to have another judge intervene in a case to help her son.

(b) The nature, extent and frequency of occurrence of the acts of misconduct: This consideration is similar to the first factor, and we note that the suggestion by former Judge Waters, that he Inter-

2. Article V, § 18(d)(1) of the Pennsylvania Constitution provides:

A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for ...; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court.
PA. CONST. art. V, § 18.

cede on behalf of Respondent's son, was not rejected or refused by the Respondent. The Respondent clearly acquiesced to the help offered by former Judge Waters. Additionally, we found that Respondent not only agreed to the *ex parte* help offered by former Judge Waters, but she actively got involved in Waters making the suggested contacts. The Respondent took no steps to reject the offer of *ex parte* help, or to report the conduct In issue, as to Waters or herself, until after she was notified that she had been recorded on an authorized wiretap conducted by the FBI.

(c) Whether the conduct occurred in or out of the courtroom: Some of the phone conversations took place in the courthouse and the contacts were made using government equipment in judicial chambers.

(d) Whether the misconduct occurred in the judge's official capacity or in his private life: The actions which brought about these charges were not related to the Respondent's official responsibilities but she utilized her position as a judge to assist her son in his case.

(e) Whether the judge has acknowledged or recognized that the acts occurred: The Respondent did not file an Answer to the Board's Complaint, which under the Rules of the Court is deemed a denial of the accusations. She later, when faced with the wiretapped conversations, readily admitted her involvement.

(f) Whether the judge has evidenced an effort to change or modify his conduct: After the initial inquiry sent to the Respondent by the Judicial Conduct Board, the Respondent denied asking former Judge Waters for any favors for her son. After the Respondent had been confronted by the FBI with the existence of the wiretap, she filed a supplemental response and later acknowledged that the conversations took place. At the hearing on sanctions held on November 21, 2016, the Respondent expressed great remorse for her conduct:

> What I did wrong was something that I shouldn't have done. I put my family before my judicial ethics, and I really am sorry about that. I can't apologize enough. I can't take it back ... It's not who I am. It's not who I want to be. It's not what I want to do. Transcript, 11–21–16 at 37.

(g) The length of service on the bench: From October 2008, the Respondent served continuously as Judge of the Court of Common Pleas of Philadelphia until her suspension as noted above. Her appointed term began on October 25, 2008, followed by an elected term which started on January 4, 2010.

(h) Whether there have been prior complaints about this judge: The Court of Judicial Discipline knows of no prior complaints against the Respondent.

(i) The effect the misconduct has upon the integrity of and respect for the judiciary: The misconduct here goes to the sanctity of the judicial process—it involved manipulating cases for reasons other than the evidence presented, and the conduct involved *ex parte* help for a family member.

(j) The extent to which the judge exploited her position to satisfy her personal desires: The Respondent explained her conduct was done for the benefit of her son. Although her son's request for reconsideration had been denied because he failed to allege a meritorious defense, she participated in arranging *ex parte* contacts to get her son treated favorably. All judges should know that the practice of fixing cases has led to the removal of judges in the

past. *See In re Zupsic*, 893 A.2d 875 (Pa.Ct.Jud.Disc. 2005).

Of special concern to the court is that the conduct here clearly prejudiced the proper administration of justice. *See In re Cioppa*, 51 A.3d 923, 930 (Pa.Ct.Jud.Disc. 2012). We have repeatedly held this violation of the Constitution carries the added element of a mental state in which the judge not only knew that the conduct in issue consisted of some neglect or impropriety, "but also acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example, by affecting a specific outcome." *In re Smith*, 687 A.2d 1229, 1238 (Pa.Ct.Jud.Disc. 1996).

## CONCLUSION

 We have great respect and commend the witnesses for appearing and providing their testimony on behalf of Respondent and for those who submitted letters on her behalf. However, as our Supreme Court said in 2007:

> The existence of good character evidence does not undo appellant's offensive behavior. Disciplinary sanctions focus beyond the one who is charged, to the message sent to the public and the effect on the expectation of standards of behavior. "[D]isciplinary sanctions ... are intended to protect the public ... and maintain the integrity of the legal system." *In re Melograne*, 585 Pa. 357, 888 A.2d 753, 755 (2005). [T]he purpose of our review is not to re-weigh the sanction against aggravating or mitigating circumstances, but to determine whether the sanction is lawful. **The Court of Judicial Discipline is charged with protecting the integrity of the judiciary and upholding public confidence in the judicial branch of government.** *[In re ]Melograne*, [571 Pa. 490, ]812 A.2d [1164, ]at 1168–69 [ (2002) ]. (Emphasis added.) "In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct." *Id.*, at 1168.

*In re Berkhimer*, 593 Pa. 366, 930 A.2d 1255, 1259–60 (2007)(emphasis added).

While we also acknowledge the honest regrets extended by the Respondent at the sanctions hearing, our review is necessarily focused on additional factors. The purpose of these proceedings is not to impose punishment on the respondent judge, or to exact any civil recovery, but to protect the people from corruption and abuse on the part of those who wield judicial power. We find nothing in the record which even remotely suggests that Respondent's misconduct was anything but voluntary and done to get her son special treatment in the judicial system. Based on the overwhelming nature of the evidence in this case by way of the wiretapped conversations, and in light of the clear mandates of the canons and constitutional provisions, we conclude that Judge Roca's conduct shows she knowingly acted in derogation of the judicial canons and, therefore, her actions amounted to willful misconduct.

It cannot be reasonably disputed that Judge Roca, at first, only requested advice from former Judge Waters, but then the conversation clearly fell into an agreement to obtain *ex parte* contacts with the judge handling her son's case. However, rather than refuse to participate in this scheme, she fully complied and willfully participated in the scheme. As we have said in more detail in prior decisions, when it comes to corrupt acts and the derogation of a fair and just judicial process, a judge must have "the willingness to stand up for what was right and buck a corrupt tide."

## ORDER

PER CURIAM

AND NOW, this 16th day of December, 2016, after a review of the entire record, and having considered the Findings of Fact and Conclusions of Law in the Court's October 20, 2016 decision;

It is ORDERED and DIRECTED that Respondent, Angeles Roca is REMOVED FROM OFFICE and shall be ineligible to hold judicial office in the future.