OPINION BY PRESIDENT JUDGE BARTON
The Judicial Conduct Board (Board) filed a Complaint against Former Judge David W. Tidd on August 26, 2016. Following a seven day trial, the parties submitted proposed findings of fact and conclusions of law during July and August, 2017. On December 15, 2017, this Court found that Former Judge Tidd violated Rule 2.16(B) of the Rules Governing Standards of Conduct of Magisterial District Judges (MDJ Rules). MDJ Rule 2.16(B) provides that a judge shall not retaliate, directly or indirectly, against a person known or suspected to have assisted or cooperated with an investigation of a magisterial district judge or lawyer. Any violation of the Canons of Judicial Conduct or MDJ Rules results in an automatic derivative violation of Article V, § 17 (b) of our Constitution, which requires that judges shall be governed by rules or canons prescribed by the Supreme Court.
On March 16, 2018, a sanction hearing was held. Upon motion of Former Judge Tidd's Counsel, the testimony of the character witnesses who testified at trial was incorporated into the sanction phase of these proceedings. Former Judge Tidd filed a Sanction Memorandum on March 15, 2018, advocating that a reprimand was an appropriate sanction for the conduct giving rise to the violations. He also exercised his right of allocution. The Board did not call any witnesses.
In substance, we determined that Former Judge Tidd's conduct in angrily confronting his judicial staff constituted retaliation under MDJ Rule 2.16(B). In our Opinion we noted that this is the first occasion where we have been called upon to determine the contours of the anti-retaliation provisions of the Canons and MDJ Rules.[1] See In re David W. Tidd, 175 A.3d 1151, 1155-1160 (Pa. Ct. Jud. Disc. 2017). We concluded that MDJ Rule 2.16(B) is violated when a judge takes action that would deter a reasonable person from pursuing a complaint or cooperating with the Board. Importantly, the conduct is evaluated using an objective standard and no *16 intent to interfere with a disciplinary investigation is required. Id.
FACTORS CONSIDERED ON SANCTIONS
In determining what sanction will be imposed for a violation of the MDJ Rules or Code of Judicial Conduct we are guided by the jurisprudence of our Supreme Court, and also from our prior decisions. We have adopted ten nonexclusive factors that are considered in arriving at a sanction. In re Roca, 151 A.3d 739, 741 (Pa. Ct. Jud. Disc. 2016), aff'd, --- Pa. ----, 173 A.3d 1176 (2017).
In arriving at a sanction, we are cognizant that the sanction we impose is intended not only to punish the violator, but also to restore public confidence in our judicial system and provide notice to other judges about how violations of the Canons and MDJ Rules are treated by this Court.
The ten factors and our analysis of each in this case include:
(1) Whether the misconduct is an isolated instance or evidenced a pattern of conduct: The conduct giving rise to the instant violations is isolated. While the Board presented a number of alleged instances of retaliatory conduct, our factual findings concluded that there was one instance of conduct that constituted the violation.
(2) The nature, extent and frequency of occurrence of the acts of misconduct: Former Judge Tidd's acts in confronting his staff members in the angry and caustic manner were shown in the video of his staff area from April 23, 2015. In our opinion on the merits of this case (Opinion) we concluded that his conduct "was inappropriate conduct for any judge in Pennsylvania, and would deter a reasonable employee from cooperating with the Board." Tidd, 175 A.3d at 1160. The conduct we found to constitute retaliation did not recur.
(3) Whether the conduct occurred in or out of the courtroom: The conduct involved interactions with Former Judge Tidd's court staff inside of the court facility, but outside of the courtroom.
(4) Whether the misconduct occurred in the judge's official capacity or in his private life: The conduct occurred in Former Judge Tidd's official capacity.
(5) Whether the judge has acknowledged or recognized that the acts occurred: Former Judge Tidd testified, at both the trial and the sanction hearing, and acknowledged his actions. He also offered his apology for his actions. The Court finds this testimony as a full and complete acknowledgment of his actions that gave rise to the violation.
(6) Whether the judge has evidenced an effort to change or modify his or her conduct: Former Judge Tidd testified extensively at trial concerning medical conditions that were contributing factors to some of the allegations. We view certain of these conditions as having some contributing effect in the totality of the conduct giving rise to the violation. Former Judge Tidd's testimony also included his sincere realization that his treatment of staff members was inappropriate, and that he will change how he interacts with others in the future. While he has resigned from the judiciary, it is the opinion of the Court that his testimony in this regard, at trial and at the sanction *17 hearing, was clear, credible, and convincing.
(7) The length of service on the bench: Former Judge Tidd was elected in 2009 and commenced his judicial service in January, 2010. As recited in the Opinion on the merits, he was re-elected in 2015 and began a second six year term in January, 2016. He resigned his commission on July 26, 2016.
(8) Whether there have been prior complaints about the judge: The Board received six complaints concerning then-Judge Tidd which formed the basis of the Complaint.
(9) The effect the misconduct has upon the integrity of and respect for the judiciary: We observe that all judicial misconduct has a deleterious effect on the integrity of and respect for our judicial system. Not all misconduct, however, bears upon the whole of our judiciary, and only a portion of that which does actually brings disrepute to the judiciary. Here, we see no effect upon the integrity of and respect for the judiciary. In this regard, Judge Tidd's character witnesses at trial included respected members of the bar and suggest that no serious negative effect resulted from the retaliation found here. Additionally, we note that despite the allegations, and following a contested election, he was re-elected to another six year term that began in January, 2016.
(10) The extent to which the judge exploited their position to satisfy his or her personal desires: There is no evidence that this violation was committed to satisfy personal desires. To the extent that it might be inferred that retaliation would work to ensure continued service in public office, we have already concluded that the violation was not done with intent to dissuade the actual cooperation of the complainants with the Board. His re-election and later resignation also weigh against any aggravating finding for this factor.
We recognize that we have "wide discretion to fashion the appropriate penalty ..." once we have found a violation of the Canons or MDJ Rules. In re Roca, --- Pa. ----, 173 A.3d 1176, 1188 (2017).
In the case of In re Berkhimer, 593 Pa. 366, 930 A.2d 1255 (2007) , our Supreme Court again confirmed that a judicial disciplinary sanction "not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct." Id. at 1259-60 (citing In re Melograne, 585 Pa. 357, 88 8 A.2d 753 ( 2005) . While each disciplinary violation and the sanction that follows is factually unique, we also strive for as much consistency as possible in order to provide the "guidance" to other judges that our Supreme Court referred to in Melograne , Berkhimer , and Roca. In so doing, we look carefully to our prior cases and the sanctions that were imposed by our predecessor judges. Nevertheless, we interpret conduct and the ensuing violations in light of our evolving precedent and contemporary standards of public confidence in our judicial system. Thus, it is difficult to categorize any particular sanction, and comparison of sanctions over the nearly 25 years our Court of Judicial Discipline has existed is particularly problematic. This is true not only because the facts of disciplinary cases vary widely, and the circumstances we review in the ten nonexclusive factors are rarely similar, but also because *18 public perception of our judiciary is always evolving.
With regard to Former Judge Tidd, we note that while no judge could know how we would interpret MDJ Rule 2.16(B) with any amount of detail, the absence of such knowledge does not completely insulate Former Judge Tidd from liability for his actions. We agree with counsel for the Board, who stated during argument at the sanction hearing that "retaliation is serious misconduct."
Significant here, however, is our finding that the conduct constituting the violation was not done with an intent to dissuade cooperation with the Board or its investigation of the complaints against Former Judge Tidd. As stated in our Opinion, our test for whether particular conduct constitutes a violation of the anti-retaliation provision is an objective one, and no intent to dissuade cooperation is needed to violate the provision.
The absence of intent, however, can still be relevant in determining what sanction should be imposed for the violation. While the absence of intent to dissuade cooperation with the Board does not absolve Former Judge Tidd from culpability, it is a factor we review in arriving at a sanction.
Also, in the nature of mitigating evidence, we find that Former Judge Tidd resigned his commission.[2] Further, and as we expressed in our Opinion, the conduct occurred simultaneous to Former Judge Tidd's staff secretly and improperly cooperating with his primary election opponent in the weeks leading to a contested primary election. His inappropriate confrontation with his judicial staff was not solely predicated on any staff member's likely cooperation with the Board, but also involved inquiry concerning his judicial staff communicating information to a political opponent. This kind of political involvement is something that all judges are trained to keep removed from judicial operations. In our Opinion we noted that it ultimately "tainted" the allegations that were made by his staff.
Lastly, both at trial and during his allocution, the judges of this Court found Former Judge Tidd's testimony to be particularly sincere and believable. Accordingly, we enter the following order.
ORDER
AND NOW, this 4th day of April, 2018, after a sanction hearing concerning the Court's finding of a violation of: (1) MDJ Rule 2.16(B) relating to retaliation against a person known or suspected to have assisted or cooperated with an investigation of a magisterial district judge; and (2) Article V, Section 17(b) of the Constitution of Pennsylvania, requiring that judges "shall be governed by rules or canons which shall be prescribed by the Supreme Court";
It is ORDERED that the sanction of REPRIMAND is imposed upon Former Judge David W. Tidd.

The wording of MDJ Rule 2.16(B), applicable to magisterial district judges, and Canon 2.16(B) of the Code of Judicial Conduct, applicable to other judges and justices, are identical.

A judge's resignation does not divest this Court of jurisdiction to adjudicate the case, nor does it mean that he or she will escape punishment for any violation. See, e.g., In re Miller, 171 A.3d 367, 371 (Pa. Ct. Jud. Disc. 2016). However, it is relevant to a number of factors we consider in imposing a sanction after finding a violation of the MDJ Rules or Canons of Judicial Conduct, including ensuring that such violations are not committed by the jurist in the future.