FILED BY PRESIDENT JUDGE DAVID J. BARTON
*654 Former Magisterial District Judge Robert Jennings, III, returns to this Court for a determination as to the sanction that should be imposed for the ethical violations found in our Opinion of July 18, 2018. In re Robert Jennings , III, 192 A.3d 372 (Pa.Ct.Jud.Disc. 2018) . There, we found that the two misdemeanor criminal convictions arising from Jennings's conduct in macing state constables who served arrest warrants and civil process from his judicial office violated the five canonical and constitutional provisions alleged by the Judicial Conduct Board. Those include:
1. Violation of Old Rule 2, Impropriety and Appearance of Impropriety to be Avoided:
A. Magisterial district judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary[.]
2. Violation of Old Rule 12, Incompatible practices:
Magisterial district judges and all employees assigned to or appointed by magisterial district judges shall not engage, directly or indirectly, in any activity or act incompatible with the expeditious, proper and impartial discharge of their duties, including, but not limited to: (1) in any activity prohibited by law[.]
3. Violation of Article V, § 18(d)(1) of the Pennsylvania Constitution ("[magisterial district judge] may be suspended, removed from office or otherwise disciplined for ... conduct which prejudices the proper administration of justice ....")
4. Violation of Article V, § 18(d)(l) of the Pennsylvania Constitution ("a [magisterial district judge] may be suspended, removed from office or otherwise disciplined for ... conduct ... which brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity ...." and
5. Violation of Article V, § 17(b) of the Pennsylvania Constitution ("[magisterial district judges] shall be governed by rules or canons which shall be prescribed by the Supreme Court.")
The details surrounding former Judge Jennings's plea of nolo contentere to these crimes, 18 Pa.C.S. § 2906(a)(4) criminal coercion (M-2), and 18 Pa.C.S. § 7322 demanding property to secure employment (M-2), are set forth in our prior opinion and we will not repeat them here.
FACTORS CONSIDERED ON SANCTIONS
In determining what sanction will be imposed for a violation of the MDJ Rules or Code of Judicial Conduct we are guided by the jurisprudence of our Supreme Court, and also from our prior decisions. We have adopted ten non-exclusive factors, sometimes called "Deming factors" from the original Washington State case where they were exposited that we consider in arriving at a sanction. In re Roca, 151 A.3d 739, 741 (Pa.Ct.Jud.Disc. 2016), aff'd, 173 A.3d 1176 (Pa. 2017) citing *655 In re Toczydlowski, 853 A.2d 24 (Pa.Ct.Jud.Disc. 2004) ; In re Deming, 108 Wash.2d 82, 736 P.2d 639 (1987).
The ten factors and our analysis of each in this case include:
(1) Whether the misconduct is an isolated instance or evidenced a pattern of conduct: The conduct giving rise to the instant violations is isolated.
(2) The nature, extent and frequency of occurrence of the acts of misconduct: Former Judge Jennings's acts in demanding ten percent of constables' earnings toward his re-election fund encompassed the period surrounding his political campaign during which he was seeking a second six year term. Because his criminal sentence included restitution, it is evident that his scheme did, in fact, result in over $3,000.00 being paid for his benefit to his re-election campaign fund.
(3) Whether the conduct occurred in or out of the courtroom: The conduct involved interactions with state constables inside of the court facility, but outside of the courtroom.
(4) Whether the misconduct occurred in the judge's official capacity or in his private life: Because the conduct involved demanding political contributions of those who were essentially working in his judicial office, and to whom he was able to assign - or not assign - compensated work, we determine that the acts occurred in his official capacity.
(5) Whether the judge has acknowledged or recognized that the acts occurred: Former Judge Jennings testified at the sanction hearing and acknowledged entering a plea of nolo contendere to criminal charges filed against him by the Office of Attorney General. However, he also stated that these pleas were the result of poor legal advice rendered by his criminal counsel (not his current counsel). While he acknowledged his conviction, at the sanction hearing, the following exchange took place:
JUDGE FORADORA: Did you retire to avoid consequences?
MR. JENNINGS: No, sir. As a matter of fact, Your Honor, I was given an opportunity if I resigned that this would go away; but I chose to fight it. It cost me a lot of money, but I chose to fight it because I didn't do what they said.
N.T. 31
As noted by counsel for the Board, former Judge Jennings did enter his plea in the Court of Common Pleas before trial, and did enter into stipulations rather than litigating the factual basis of this case. We note that this involves some degree of acceptance and admission of the conduct, and that it avoided the need for the Board to use its resources in presenting this case in a contested trial.
(6) Whether the judge has evidenced an effort to change or modify his or her conduct: Former Judge Jennings resigned his commission as a magisterial district judge for Dauphin County shortly following this Court changing his suspension from one with pay, to one without pay. Because of his resignation, he is unlikely to re-offend.
(7) The length of service on the bench: Former Judge Jennings was elected in 2003 and commenced his judicial service in January, 2004. The allegations giving rise to this disciplinary case occurred during his campaign for re-election in February, 2009, following completion of five years of judicial service. Judge Jennings was successful in his bid for a second six-year term of office. This case was not commenced by the Board until November 14, 2014. He was not charged in a criminal complaint by the Office of Attorney General, however, until July 23, 2015. He resigned *656 his commission on July 31, 2015. His total judicial service as a magisterial district judge, including periods before, during, and after the instant violations, was approximately 11 years, and 11 months.
(8) Whether there have been prior complaints about the judge: The Board has not presented any evidence of prior disciplinary complaints against Judge Jennings.
(9) The effect the misconduct has upon the integrity of and respect for the judiciary: We observe that all judicial misconduct has a deleterious effect on the integrity of and respect for our judicial system. In our opinion on the merits of this case, we recited our view that this case involved corruption - demanding money to seek continued employment. In that opinion we found that Judge Jennings's conduct brought disrepute upon the entire judiciary.
(10) The extent to which the judge exploited their position to satisfy his or her personal desires: By demanding a percentage of the earnings from the state constables who served arrest warrants and civil process from his court, Judge Jennings sought to use these individuals to fund his re-election campaign, in order to continue to receive his judicial salary and benefits for another six year term. As such, his acts were motivated by lucre.
DISCUSSION
At the sanction hearing held on November 8, 2018, former Judge Jennings presented six witnesses, and also exercised his right of allocution. This court acknowledges that these witnesses took time from their schedules to appear in court. They testified sincerely and convincingly about Judge Jennings's substantial personal involvement in facilitating defendants receiving social services, including drug treatment, in his magisterial district. These witnesses also provided the Court with a more complete understanding of Judge Jennings's judicial service, his involvement with community activities such as youth football and women's recovery programs, and his attention to truancy prevention. These witnesses established that former Judge Jennings was an active and concerned member of his community and an involved and caring jurist.
Former Judge Jennings also submitted over 40 letters of recommendation, including that of Lori Ann Jenkins, Esquire, providing her opinion that his judicial service was marked by his being "generous, conscientious, and practical ..." and that he has "served this community well in and out of court ... even after his tenure on the bench." Letter of Lori Ann Jenkins, October 16, 2018 (contained within exhibit admitted into evidence without objection).
The sanctioning of any particular jurist serves a broader purpose than the retributive goals associated with criminal sentences. Judicial disciplinary sanctions "not only punish [...] the wrongdoer, but also repair [...] the damaged public trust and provide [ ] guidance to other members of the judiciary regarding their conduct." In re Berkhimer, 593 Pa. 366, 930 A.2d 1255, 1259-60 (2007). We are particularly mindful of the multiple aims of sanctions in cases where, as here, the offending conduct has not previously received scrutiny by our prior decisions.
In In re David W. Tidd, 181 A.3d 14 (Pa.Ct.Jud.Disc. 2018), we noted that although our cases are very fact-specific, we are cognizant of the need for some amount of proportionality, to the extent possible. Consistency in sanctions for similar offending conduct aids in providing the "guidance to other judges" that our Supreme Court referred to in Melograne, Berkhimer , and Roca. We further noted in Tidd that we *657 are nonetheless charged with interpreting conduct in view of our evolving precedent and contemporary standards of public confidence in our judicial system.
With regard to former Judge Jennings, we are convinced that his extra-judicial involvement in areas that impact his community is indicative of a dedicated community member and judge. However, as our Supreme Court reminds us in the case of In re Melograne, 585 Pa. 357, 888 A.2d 753, 755 (2005), "[t]he existence of good character evidence does not undo appellant's offensive behavior. Disciplinary sanctions focus beyond the one who is charged, to the message sent to the public and the effect on the expectation of standards of behavior." Id.
Further, and as we noted in our opinion on the merits of this case, Judge Jennings's behavior was motivated by personal gain. By demanding that the state constables contribute ten percent of their earnings toward his re-election fund, he was using the power of his office to aid in obtaining his future judicial salary and benefits. In fact, the record reflects that the Court of Common Pleas ordered restitution of over $3,000.00, in funds that were paid pursuant to Jennings's demands. See Jt. Stip. No. 14, Ex. 2, 3 (Guilty Plea written colloquy reflecting $3,135.00 in restitution to be paid); Ex. 4 (Guilty Plea/Sentencing transcript).
We remain somewhat puzzled by former Judge Jennings's allocution at the sanction hearing. To this court, sitting en banc, Jennings stated, "... I chose to fight it because I didn't do what they said." (N.T. 31).
In our sanction hearings we are accustomed to jurists appearing and offering some degree of contrition consistent with a true acceptance of responsibility for the offending acts. Here, however, former Judge Jennings attributes his current predicament to poor legal advice, rather than admitting that he made misjudgments in demanding political contributions from those over which he had financial leverage. At the sanction hearing, Jennings's counsel requested that we judge him "not on one isolated page of the book." (N.T. 35). Indeed, that is one of the particular purposes served by our having a sanction hearing. But here, what remains missing from Jennings's allocution is his acknowledgment of fault. Without such an admission, recounting the numerous positive actions he took while serving as a jurist strikes us as more an attempt to deflect responsibility than providing a complete picture of his judicial and community service. Not only do these good acts not counterbalance the violations, his refusal to accept responsibility is itself troubling.
In our recent jurisprudence, this Court has mainly imposed the sanction of removal where jurists have undertaken criminal acts and used their position to satisfy their personal desires. See e.g. In re Jeffrey Joy, 148 A.3d 162 (Pa.Ct.Jud.Disc. 2016) ; In re Thomasine Tynes, 149 A.3d 452 (Pa.Ct.Jud.Disc. 2017). This is also true even when corrupt acts have not resulted in criminal prosecutions or convictions. See e.g. In re Angeles Roca, 151 A.3d 739 (Pa.Ct.Jud.Disc. 2016)aff'd. 643 Pa. 585, 173 A.3d 1176 (Pa. 2017) ; In re Dawn Segal, 151 A.3d 734 (Pa.Ct.Jud.Disc. 2016)aff'd 643 Pa. 193, 173 A.3d 603 (2017) ; In re Michael Sullivan, 135 A.3d 1164 (Pa.Ct.Jud.Disc. 2016) ; In re Eagen, 814 A.2d 304 (Pa.Ct.Jud. Disc. 2002) (misdemeanor convictions resulting in removal); In re Pazuhanich, 858 A.2d 231 (Pa.Ct.Jud.Disc. 2004) (misdemeanor convictions resulting from plea of nolo contendere resulting in removal).
In consideration of these factors, we impose the sanction of removal and a bar on holding future judicial office.
*658 ORDER
AND NOW, this 19th day of December, 2018, after a sanction hearing concerning the Court's finding of violations of Rules Governing Standards of Conduct of Magisterial District Judges Old Rule 2 (impropriety and appearance of impropriety), Old Rule 12 (activities incompatible with proper discharge of duties), and violations of the Constitution of Pennsylvania, Article V, § 17 (b) (judges shall be governed by rules or canons), § 18 (d)(l) (conduct which prejudices administration of justice), § 18 (d)(l) (conduct which brings the judicial office into disrepute); for the reasons set forth in the sanction opinion entered this date;
It is ORDERED that Robert Jennings, III, is REMOVED FROM OFFICE and barred from holding judicial office in the future.