1. Whether the misconduct is an isolated instance or evidenced a pattern of conduct: The conduct at issue here does involve several incidents of different types as set forth in the stipulations agreed to by counsel.
2. The nature extent and frequency of occurrence of the acts of misconduct: Respondent Shaw has not been charged with any criminal conduct but the patently improper conduct he committed in engaging in a romantic relationship with the girlfriend of a defendant he was supervising in Treatment Court and the salacious texts he sent are clearly impermissible. Respondent Shaw's inaction in the face of the conflict resulting from his counsel appearing before him was done repeatedly and, apparently, with little, if any, thought about its potential consequences.
3. Whether the conduct occurred in or out of the courtroom: The romantic relationship at issue occurred outside of the courtroom but was, of course, related to courtroom proceedings. The conflicted representation, of course, occurred in the courtroom.
4. Whether the misconduct occurred in the judge's official capacity: All of the misconduct at issue here grew out of Respondent Shaw's official capacity. While the physical side of the romantic relationship could be said to have occurred in Respondent Shaw's private life it had its beginning in his official capacity as a Treatment Court judge.
5. Whether the judge acknowledged or recognized that the acts occurred: Respondent Shaw has unequivocally acknowledged his improper conduct.
6. Whether the judge has evidenced an effort to change or modify his conduct: Respondent Shaw has unquestionably changed his conduct and is no longer in office. The evidence adduced at the sanction hearing makes it clear he would be unlikely to offend again in any event. His contrition is obviously genuine.
7. The length of service on the bench: Respondent Shaw served as a Magisterial District Judge for a total of 24 years. He did not run for reelection in 2017.
8. Whether there have been prior complaints about the judge: No evidence was presented of any prior complaints against Respondent Shaw.
9. The effect the misconduct has upon the integrity of and respect for the judiciary: This Court has found that Respondent *444 Shaw's misconduct amounts to a violation of the Disrepute Clause and that it has had a negative effect on the reputation of the judiciary at large.
10. The extent to which the judge exploited his or her position to satisfy personal desires: Obviously Respondent Shaw did exploit his position for personal reasons and gratification.
II. DISCUSSION
At the sanction hearing Respondent Shaw took full responsibility for his actions. Although his ethical violations do not amount to criminal acts he did bring disrepute to the judiciary with his actions.
A review of the cases previously decided by this Court yields none directly on point with the situation here. Several cases do, however, provide some ancillary guidance.[2] In In re Cicchetti , 697 A.2d 297 (Pa.Ct.Jud.Disc. 1997) (aff'd 560 Pa. 183, 743 A.2d 431 (2000) ), the president judge of a county coerced female employees into having sexual relations with him through the use of occasionally strong methods of persuasion. Judge Cicchetti was given a severe reprimand and censure as a sanction.
In In re Berkhimer , 877 A.2d 579 (Pa.Ct.Jud.Disc. 2005) , a magisterial district judge sexually harassed his employees with foul language and deliberate displays of pornography. He also used his judicial office to contact constituents to congratulate them for their achievements with an eye towards winning their votes for re-election. Judge Berkhimer had a prior ethical offense for asking a police officer to lower a charge against a friend. Judge Berkhimer was ordered removed from office.
A third case of interest is In re Alonge , 3 A.3d 771 (Pa.Ct.Jud.Disc. 2010) , involving a magisterial district judge who sexually harassed his staff and lied about his qualifications for office. Judge Alonge was suspended without pay for sixty days and placed on probation for an additional four months.
The Sanction Hearing Here
At the sanction hearing seven witnesses presented very favorable testimony about Respondent Shaw's good work in his community. Over 40 letters were submitted to the Court by Respondent Shaw further speaking of his good works and character.
The misconduct committed, while clearly inexcusable, was at least not criminal. Respondent Shaw is no longer on the bench having decided not to run for reelection with this matter pending.
In view of the overall record in this case we find that the appropriate sanction is a severe reprimand and five thousand ($ 5,000) dollar fine to be paid within six months to the General Fund of the Commonwealth of Pennsylvania. Respondent Shaw will remain under the supervision of this Court until the fine is paid.
Judges Barton (joined by Judge Jones ) and Judge Foradora file Concurring Statements.
CONCURRING STATEMENT BY PRESIDENT JUDGE EMERITUS DAVID J. BARTON
I join in the sanction imposed by the learned majority. I write separately only to depart from the majority's comment, in the final section of the opinion, concerning the lack of criminality of Judge Shaw's conduct.
*445 Criminality of conduct of a judge is typically a dispositive factor concerning whether particular conduct rises to the level of judicial misconduct. Its presence in nearly all cases results in a finding of judicial misconduct. However, a number of cases that come before us have involved conduct that is potentially criminal, but uncharged. In many of those cases we have found that the jurists involved committed misconduct. Thus, the absence of charged criminal conduct does not always equate to the absence of judicial misconduct. The majority's reference to Judge Shaw's conduct as not being criminal, as it appears, seems to suggest a larger role than I believe is accurate. Although it may be implicit in the majority's arrival at a sanction, the absence of charged criminal conduct is but one fairly minor factor in arriving at the sanction imposed in this case.
I also concur in the result here for additional reasons. Many judicial districts have created and are using various specialty and treatment courts as an important and viable method of disposing of cases. These courts are meeting important needs of the community.
Some such courts use magisterial district judges who act outside of the judicial authority granted a magisterial district judge under 42 Pa. C.S. § 1515.[1] This places the judge in a role that is less clearly defined than those typically encountered in traditional judicial proceedings.
Decisions, such as whether or not to remove someone from a program, or impose sanctions such as bail revocation or probation violations, rest with the trial judge in the Court of Common Pleas. While the authority may be retained by the trial judge as to violations, often the trial judge acts on information provided at least in part by the magisterial district judge, as well as by the other members of a committee overseeing a treatment court. As a rule, judicial duties are rarely exercised with a judge sitting as a part of a committee. The authority to impose sanctions and sentences provided by law is conferred upon individual jurists, not committees.
Here, Judge Shaw's role in treatment court is not entirely clear. See In re Shaw , 192 A.3d 350, 352-353 (Pa.Ct.Jud.Disc. 2018) (Stip. Nos. 9 - 22). However, whether Judge Shaw was possessed with the authority to incarcerate a treatment court participant directly, or indirectly, or impose a lesser consequence, in the eyes of a defendant standing before the Treatment Court Judge Shaw represented the authority of the Court. His decisions could profoundly affect the trajectory of any particular case.
Having reviewed the stipulations carefully and listened to testimony at the sanction hearing, I believe that Judge Shaw, whose career spanned 23 years of otherwise honorable service failed to fully apprehend the underlying situation that led to certain of the violations we have found. It is a cautionary story where the judicial role crosses into unfamiliar and uncharted territory. In one view, he was a member of a committee that made recommendations to the trial judge. This may have led to his failure to apprehend the roles of various participants and persons involved tangentially. However, it is beyond question that he also acted as a judge, albeit one with less decision making authority than is typical for judges. Although this likely was a contributing factor, it is simply one factor *446 that bears consideration in reaching the sanction in this case.
The majority notes that Judge Shaw's "contrition is obviously genuine." (Slip. Op. at 3). Judge Shaw's sincerity of remorse and his acceptance of responsibility are two factors which also lead me to arrive at the same sanction as the majority.
CONCURRING STATEMENT BY JUDGE JOHN H. FORADORA
I concur in this Court's Opinion of the sanction of a severe reprimand and fine. I write separately to note that I believe the fine should be substantially higher.
There are two reasons for my difference of opinion:
First, the President Judge of any court is chief operating officer of the Court and delivers praise or punishment to court staff and judges underneath his or her employment and leadership. A review of the stipulated facts (numbers 97 through 101) deal with the meeting held with President Judge Bierne of Bradford County concerning the allegations of sexual impropriety. When Shaw was confronted with "inappropriate texting" by Judge Bierne, he admitted that he sent and received sexually explicit texts from a person (the victim) who was dating a participant in his drug court. As stipulated fact 100 indicates, he denied that he was having an "affair" with this person. Recognizing that people may say there can be a different of opinion regarding what the term "affair" means, this judge cannot imagine having a physical sexual liaison does not qualify as an "affair." Because Shaw denied having an "affair," while admitting to inappropriate texting (but not admitting a planned sexual encounter), he lied to his President Judge. This Judge believes that Shaw should have, at the very least, told President Judge Bierne that he had a sexual encounter with this person (the victim) set up through the sexually explicit texts even if he did not feel this encounter was an "affair," The fact that he did not tell her this information when she questioned him about this relationship, leads this judge, as a President Judge, to believe that the fine should be higher.
Second, this Court in its Opinion cites In re Cicchetti , 697 A.2d 297 (Pa.Ct.Judg.Disc. 1997) (aff'd 560 Pa. 183, 743 A.2d 431 (2000) ), In re Berkhimer , 877 A.2d 579 (Pa.Ct.Jud.Disc. 2005), and In re Alonge , 3 A.3d 771 (Pa.Ct.Jud.Disc. 2010) , as cases for ancillary guidance. There can be no doubt our society's mores and views of sexual harassment have changed since Cicchetti (which is the closet factual case because it involved actual sexual contact); but further, views have also changed even since Alonge in 2010 with the new awareness and understanding of victimization. Even though this Court states in Footnote 4 that the above cited cases "be considered under the evolving precedent of this Court and contemporary standards of public confidence in our judicial system." I write separately to express, in my opinion, the Court is not consistent with our "contemporary standards."
Because I believe this Court need to be current with an every-changing society, and also protect the authority of the President Judge, I believe the fine in this matter should be an amount much greater than the amount the majority has assessed.

The Honorable James C. Schwartzman did not participate in this Decision.

The Cicchetti, Berkhimer and Alonge cases must, of course, be considered under the evolving precedent of this Court and the contemporary standards of public confidence in our judicial system. See In re Tidd , 181 A.3d 14, 17 (Pa.Ct.Jud.Disc. 2018).

Many commentators have suggested that such actions are therefore outside of any judicial immunity provided by law.